AVIATION VENTURES, INC., DBA VISION AIR, A NEVADA CORPORATION, APPELLANT, v. JOAN MORRIS, INC., DBA LAS VEGAS TOURIST BUREAU, A NEVADA CORPORATION, RESPONDENT.

No. 39253

April 28, 2005                                          110 P.3d 59

---

*Lemons Grundy & Eisenberg* and *Alice G. Campos Mercado,* Reno; *Eric L. Zubel,* Las Vegas, for Appellant.

*Deaner, Deaner, Scann, Malan & Larsen* and *Susan Williams Scann,* Las Vegas, for Respondent.

Before ROSE, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, ROSE, J.:

This is an appeal from a district court order granting respondent's motion for summary judgment in an action to recover on a promissory note. We conclude that the district court improperly granted respondent's motion for summary judgment before the development of the record through discovery. We also conclude that insolvency is not a requirement to obtain a setoff. Inasmuch as our decision in *Campbell v. Lake Terrace, Inc.*[1] requires the insolvency of one of the parties to assert a setoff, that case is overruled.

### FACTS AND PROCEDURAL HISTORY

In the early summer of 1996, Aviation Ventures, Inc., d/b/a Vision Air (Vision), a Nevada corporation, and the Las Vegas Tourist Bureau (LVTB) allegedly formed a joint venture agreement to set up a wholesale tour company in Las Vegas called Las Vegas Tour and Travel (LVT&T). Vision admits that both parties failed to document the existence of the joint venture agreement. Vision's president and chief executive officer is William Acor. Robert Mor-

---

[1]111 Nev. 1329, 905 P.2d 163 (1995).

ris, a friend of Acor's, owned and operated LVTB with his wife Joan Morris (Ms. Morris). Vision avers that under the joint venture agreement, Vision and LVTB agreed to share ownership and profits equally and, as a result, the two companies divided LVT&T's profits equally, at least until June or July 1999. To improve profits, Vision charged a discounted rate to LVT&T for all customers booked on Vision tours and also provided LVT&T with office space at its own facilities at no extra charge.

According to Vision, this joint venture continued to expand into other aspects of the parties' businesses and in 1997, the companies entered into a business association under which Vision and LVTB would then form other businesses. To achieve that purpose, the companies formed Vision Holidays, Inc., and Tour Coach Leasing, LLC, in 1998. Subsequently, Vision asserts that it purchased three tour buses at a cost of $400,000 per bus, paid exclusively by Vision. Ms. Morris, Mr. Morris, William Acor and other Vision officers signed personal guarantees on the notes for the buses, which Vision maintains is further evidence of the joint venture agreement. The parties supposedly agreed to share equally in the profits of the two new companies.

As a new company, Vision needed start-up capital and as a result, Mr. Morris, acting on behalf of LVTB, agreed to lend Vision $150,000. On or about December 4, 1998, Vision's chief financial officer executed and delivered a promissory note to LVTB in the amount of $150,000, which Robert Morris signed on behalf of LVTB. Ms. Morris did not sign the first note. However, the note was re-executed six times, each time extending the date of maturity, and Ms. Morris signed the sixth and seventh promissory notes. The final note gave Vision until December 31, 2000, to make payment.

The loan provided Vision with a line of credit under which it could take advances against the principal. The note did not discuss a means of repayment. LVTB contends that Vision has paid nothing on the loan. Acor admitted in his deposition that as of May 2000, Vision had paid nothing on the loan. Vision contends, however, that Acor and Mr. Morris agreed that LVTB would be paid with Vision's share of the profits from LVT&T.

Vision alleges that after Mr. Morris' death in November 1999, the business relationship between Vision and LVTB deteriorated. As a result, LVT&T vacated the offices located at Vision's facilities on February 15, 2001. While Vision and LVTB divided LVT&T's profits equally until June or July 1999, LVTB ceased distributing profits from LVT&T to Vision after 1999. Vision complains that LVTB also declined Vision's requests for financial information about LVT&T, despite Vision's repeated requests for

such information for the calendar years 2000 and 2001. Vision also sought an accounting to determine the amount of its profits to be applied to the promissory note.

On July 24, 2001, approximately six months after the maturity date of the promissory note, Joan Morris, Inc., d/b/a LVTB, a Nevada corporation, filed a lawsuit against Vision and asserted claims of unjust enrichment and breach of the promissory note. In response, on September 18, 2001, Vision filed an answer and alleged various defenses including the defense of setoff. Vision contended that because LVTB owed it money pursuant to other business transactions between the parties, that amount should be offset against the amount due on the note.

In December 2001, before the parties had held the early case conference required under NRCP 16.1, LVTB moved for summary judgment, basing the motion on the terms of the promissory note and Acor's admission of nonpayment. Discovery had not yet begun at this time. In opposition, Vision requested a continuance under NRCP 56(f) to allow it to engage in discovery in order to marshal facts to oppose the motion.

To support its opposition, Vision presented affidavits from Acor, and Gary Acquavella, Vision's chief financial officer, both of whom attested to the business association plan, the creation of the promissory note, and the terms under which the note would be repaid. Vision maintained that it demonstrated a genuine issue of material fact as to Vision's right to set off amounts owed by Ms. Morris and LVTB. Vision argued that further discovery was necessary on these issues.

The district court denied Vision's request for an NRCP 56(f) continuance and granted LVTB's motion for summary judgment, with judgment entered in favor of LVTB in the amount of $202,959.41, including interest and costs. The district court entered the order and judgment in February 2002, approximately seven months after LVTB filed its complaint and before the initiation of discovery. Vision appeals the district court's order.

## DISCUSSION

### NRCP 56(f) motion for a continuance

Vision contends that the district court erred in granting summary judgment because it improperly denied Vision's NRCP 56(f) request for a continuance to allow it to conduct discovery to oppose the summary judgment motion. We agree.

NRCP 56(f) permits a district court to grant a continuance when a party opposing a motion for summary judgment is unable to mar-

shal facts in support of its opposition.[2] A district court's decision to refuse such a continuance is reviewed for abuse of discretion.[3] Furthermore, a motion for a continuance under NRCP 56(f) is appropriate only when the movant expresses how further discovery will lead to the creation of a genuine issue of material fact.[4]

In *Halimi v. Blacketor,* this court concluded that a district court had abused its discretion when it denied an NRCP 56(f) motion for a continuance and granted summary judgment in a case where the complaint had been filed only a year before summary judgment was granted.[5] This court noted that summary judgment is improper when a party seeks additional time to conduct discovery to compile facts to oppose the motion.[6] Furthermore, this court held that when no dilatory motive was shown, it was an abuse of discretion to refuse a request for further discovery at such an early stage in the proceedings.[7]

In its opposition to the motion for summary judgment, Vision informed the district court that the parties had yet to file a joint

---

[2]*Ameritrade, Inc. v. First Interstate Bank,* 105 Nev. 696, 699, 782 P.2d 1318, 1320 (1989). NRCP 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

[3]*Harrison v. Falcon Products,* 103 Nev. 558, 560, 746 P.2d 642, 643 (1987).

[4]*Bakerink v. Orthopaedic Associates, Ltd.,* 94 Nev. 428, 431, 581 P.2d 9, 11 (1978) ("Rule 56(f), NRCP, provides that a court may, in its discretion, refuse an application for summary judgment or order a continuance, '[s]hould it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition. . . .' There is nothing in the record before this court which would support a finding that the district court abused its discretion in this instance. Appellant made no attempt to identify in his affidavit what facts might be obtained, in addition to the records, depositions, and affidavits already on file, that were essential to justify his opposition.").

[5]105 Nev. 105, 106, 770 P.2d 531, 531-32 (1989).

[6]*Id.* at 106, 770 P.2d at 531; *see also Ameritrade,* 105 Nev. at 699-700, 782 P.2d at 1320 (concluding that the district court abused its discretion when summary judgment was granted only eight months after the filing of the complaint).

[7]*Halimi,* 105 Nev. at 106, 770 P.2d at 531-32; *see also Ameritrade,* 105 Nev. at 700, 782 P.2d at 1320; *Summerfield v. Coca Cola Bottling Co.,* 113 Nev. 1291, 1294-95, 948 P.2d 704, 705-06 (1997) (holding that district court abused its discretion by denying an NRCP 56(f) motion for continuance when complaint had been filed two years previous and party was not dilatory in conducting discovery).

case conference report as required under NRCP 16.1 and that, as a result, discovery had not yet begun. In order to obtain discovery, Vision filed a motion for a continuance and attached affidavits from Vision's president and from its chief financial officer that detailed LVTB's refusal to give Vision financial information regarding LVT&T. Vision argued that this information was required to determine the full amount of Vision's indebtedness on the note.

We agree with Vision that the district court should have granted its motion for a continuance to allow it to engage in discovery. Vision clearly enunciated how discovery would allow it to develop the record in order to properly oppose LVTB's motion.[8] Furthermore, less than eight months had passed between the complaint and the granting of summary judgment. There is no evidence in the record that Vision lacked diligence in conducting discovery. More importantly, Vision requested a continuance before either party had filed a joint case conference report, which must precede discovery.

In this case, discovery was necessary for the court to appropriately consider the circumstances surrounding the agreement on the note, a necessary corollary to properly determining whether evidence of a separate agreement to pay the note with LVT&T's profits violates the parol evidence rule. Because it is unclear whether genuine issues of material fact exist as to the circumstances surrounding the making of the note and its terms, we conclude that the district court should have granted Vision's motion for a continuance to allow for proper development of the record. As a result, we further conclude that LVTB's motion for summary judgment was improperly granted.[9]

*The defense of setoff*

In its answer, Vision asserted the defense of setoff, arguing that it was entitled to such relief due to the parties' mutual indebtedness. Vision opposed LVTB's motion for summary judgment, arguing that genuine issues of material fact exist as to Vision's affirmative defense of setoff. We agree.

Setoff is an equitable remedy that should be granted when justice so requires to prevent inequity.[10] ''Setoff is a form of counter-

---

[8]*Cf. Bakerink,* 94 Nev. 428, 581 P.2d 9 (concluding that district court did not abuse its discretion in denying request for continuance where party failed to identify how discovery was necessary to oppose motion for summary judgment).

[9]We decline to address the issue of whether evidence of a separate agreement to pay the note with LVT&T's profits is barred by the parol evidence rule because we conclude that further discovery is necessary to properly address that issue.

[10]*Campbell,* 111 Nev. at 1333, 905 P.2d at 165.

claim which a defendant may urge by way of defense or to obtain a judgment for whatever balance is due."[11] Setoff is a doctrine used to extinguish the mutual indebtedness of parties who each owe a debt to one another.[12] In fact, the claims that give rise to a setoff need not arise out of the same transaction; they may be entirely unrelated.[13] At least one court has allowed a defendant to assert the defense of setoff in an action between original parties to a note.[14]

In *Campbell,* this court set forth two requirements that must be met under Nevada law to successfully assert the defense of setoff: (1) each party must have a valid and enforceable debt against the other party, and (2) one of the parties must be insolvent.[15] This court concluded that a setoff was improper because the parties were not mutually indebted to one another.[16] The *Campbell* case therefore did not discuss the insolvency requirement.

In *Campbell,*[17] and the subsequent Nevada cases addressing the issue of setoff, the insolvency requirement was based on the reasoning of an Oregon case, *Korlann v. E-Z Pay Plan, Inc.,*[18] which dealt with the issue in the context of a debtor-creditor relationship. In that case, the Oregon Supreme Court stated:

> Setoff is usually allowed where, through a course of separate transactions, two parties become indebted to each other. If one of the parties becomes insolvent, the other, instead of paying his debt in full and receiving a dividend on what is owed him, is held only for the difference, if any, between his debt and the insolvent's. The reason for such a rule is said to lie in the injustice of a contrary rule.[19]

From this language, we imported the requirement of insolvency. However, the Oregon Supreme Court stated further that "[b]etween solvent merchants, setoffs are a matter of routine bookkeeping."[20] In *Paul B. Emerick Co. v. Wm. Bohnenkamp & Associates, Inc.,* the Oregon Supreme Court noted that:

> Williston says that "Where both parties to a controversy are solvent, the right of set-off has merely procedural impor-

[11]*Trueheart v. Braselton,* 875 S.W.2d 412, 415 (Tex. App. 1994).

[12]*Id.*

[13]*Campbell,* 111 Nev. at 1332, 905 P.2d at 165.

[14]*Trueheart,* 875 S.W.2d at 415-16.

[15]111 Nev. at 1333, 905 P.2d at 165.

[16]*Id.*

[17]*Id.*

[18]428 P.2d 172 (Or. 1967).

[19]*Id.* at 175.

[20]*Id.*

tance. . . . But if one of them is insolvent, it is a substantial disadvantage to the solvent party if he is compelled to discharge in full the debt which he owes and recover only a fraction of the debt which is owing to him."[21]

Therefore, setoff should be allowed in cases where both parties are solvent, but is especially necessary in cases where one party is insolvent to protect the interests of the solvent party.

We now conclude that insolvency is not necessary to obtain a setoff between two mutually indebted parties. This conclusion coheres with the purpose behind the doctrine of setoff, which allows mutually indebted parties to "apply the debts of the other so that by mutual reduction everything but the difference is extinguished."[22] It also serves the interests of efficiency by allowing two parties with mutual claims of indebtedness to extinguish their debts against one another in a single proceeding. Therefore, we overrule that portion of *Campbell* that requires insolvency for the claim to apply.

As a result, Vision is entitled to assert setoff as a defense in the instant case. We also conclude that it is unclear whether genuine issues of material fact exist regarding the issue of the amount of Vision's indebtedness. Further discovery will clarify whether summary judgment is appropriate in this case. Therefore, we reverse the district court's order granting summary judgment and remand for further proceedings consistent with this opinion.

*Motion to amend*

Vision also contends that the district court erred in denying its motion to amend its answer to add a counterclaim. This court has stated that the determination to grant leave to amend to add a counterclaim is "within the sound discretion of the trial court, and is not to be disturbed on appeal in the absence of a gross abuse thereof."[23] At this time, we cannot conclude that the district court committed such an abuse. However, we note that once further discovery has been conducted, leave to amend may be appropriate to allow for the efficient disposal of the claims and counterclaims between Vision and LVTB.

---

[21]409 P.2d 332, 334 (Or. 1965) (quoting 6 *Williston on Contracts* § 1998, at 5602 (rev. ed. 1938)) ("[I]f this had been a contest between Emerick and a solvent Bohnenkamp there would have been no doubt as to Emerick's right to a set-off.").

[22]*Campbell,* 111 Nev. at 1332, 905 P.2d at 165.

[23]*Nev. Bank Commerce v. Edgewater, Inc.,* 84 Nev. 651, 653, 446 P.2d 990, 992 (1968).

## CONCLUSION

The district court improperly denied Vision's motion for a continuance under NRCP 56(f). That continuance should have been granted to allow development of the record through discovery. Consequently, we conclude that the district court erred by granting LVTB's motion for summary judgment at such an early stage in the proceedings. We further conclude that it is not necessary for a party to demonstrate the insolvency of one of the parties to appropriately assert a claim of setoff and inasmuch as *Campbell* requires one of the parties to be insolvent to achieve setoff, that case is overruled.

Accordingly, we reverse the district court's order granting summary judgment and remand this case to the district court for further proceedings consistent with this opinion.

GIBBONS and HARDESTY, JJ., concur.