JOSEPH FRANCIS, Appellant, *v.* WYNN LAS VEGAS, LLC, dba WYNN LAS VEGAS, Respondent.

No. 54605

October 6, 2011 · 262 P.3d 705

[Rehearing denied February 23, 2012]

*The Law Office of Gary M. Pakele* and *Gary M. Pakele*, Reno, for Appellant.

*Pisanelli Bice PLLC* and *Todd L. Bice* and *Debra L. Spinelli*, Las Vegas, for Respondent.

Before SAITTA, C.J., HARDESTY and PARRAGUIRRE, JJ.

## OPINION

By the Court, SAITTA, C.J.:

In this appeal, we address several issues arising from a civil litigant's invocation of his Fifth Amendment privilege against self-incrimination. The salient issue we consider is how, in response to a civil litigant's request for accommodation of his or her privilege, the district court should proceed in order to prevent the opposing party from being unfairly disadvantaged. As it pertains to this matter, we address whether the district court abused its discretion in refusing to permit appellant to withdraw his invocation and in denying his request to reopen discovery.

Following the lead of well-established federal precedent, we conclude that in response to a civil litigant's request for accommodation of his or her privilege, the district court should balance the interests of the invoking party and the opposing party's right to fair treatment. After reviewing the particular considerations that bear on striking this balance in the instant case, we conclude that the district court did not abuse its discretion in refusing to permit appellant to withdraw his invocation or in denying his request to reopen discovery. We further conclude that the district court did not abuse its discretion in denying appellant's NRCP 56(f) motion, nor did it err in granting respondent summary judgment.

### FACTS AND PROCEDURAL HISTORY

In 2007, during a trip to Las Vegas, appellant Joseph Francis signed two casino markers[1] in favor of respondent Wynn Las

---

[1]A casino marker "is an instrument, usually dated, bearing the following information: the name of the player; the name . . . of the player's bank; and the instruction 'Pay to the Order of' the casino for a specific value in United States dollars." *Nguyen v. State*, 116 Nev. 1171, 1173, 14 P.3d 515, 516 (2000). "If payment is not forthcoming, the gaming establishment has the option to refer the customer for possible criminal prosecution." *Id.* at 1173, 14 P.3d at 517. We have explained that a casino marker is the equivalent of a check for purposes of NRS 205.130(1), the Nevada bad check statute. *Id.* at 1175, 14 P.3d at 518.

Vegas, LLC, d.b.a. Wynn Las Vegas for $2.5 million and $300,000. At the conclusion of Francis's trip, he had $800,000 on his front money account, comprised of a $600,000 wire transfer and $200,000 in casino chips. Wynn applied this $800,000 to Francis's outstanding markers, leaving a balance of $2 million due and owing.

While Francis was incarcerated in Reno on an unrelated matter, he persuaded Wynn to delay collection, but no payment from Francis was forthcoming after his release. In e-mails that Francis sent to representatives for Wynn, he acknowledged the debt and stated his intention to pay, but he claimed that he was entitled to an unspecified discount. Francis never paid Wynn any portion of the $2 million balance.

In June 2008, Wynn sued Francis for breach of contract, conversion, unjust enrichment, and breach of the covenant of good faith and fair dealing. Francis answered the complaint and asserted numerous affirmative defenses and counterclaims for, among other things, breach of contract, conspiracy, and extortion. The parties stipulated to a scheduling order and a discovery plan whereby discovery would close by April 6, 2009. Wynn produced initial disclosures of over 100 documents. Francis produced only a letter from Wells Fargo that stated his bank account had been closed.

In September 2008, Wynn referred Francis to the Clark County District Attorney's office, which initiated a criminal prosecution against Francis. The criminal complaint charged Francis with theft and passing a check with intent to defraud. The complaint stated that the charges arose from his failure to pay Wynn the balance due on the casino markers.

Meanwhile, discovery in the civil matter proceeded. Although nothing in the record indicates that Francis had sought accommodation from the district court regarding his concern that he would incriminate himself by answering questions during his deposition, when Wynn deposed him, he asserted his Fifth Amendment privilege to nearly every question:

> [WYNN'S COUNSEL]. Have you ever been to the Wynn hotel and casino?
>
> [FRANCIS]. I respectfully decline to answer based upon my right to remain silent as guaranteed . . . by the Fifth Amendment of the United States Constitution and the State of Nevada.
>
> Q. Have you ever been in the state of Nevada before?
>
> A. I respectfully decline to answer based upon my right to remain silent as guaranteed by the Constitutions of the United States of America and the State of Nevada.
>
> Q. How much money do you believe that you owe the Wynn hotel and casino?

A. I respectfully decline to answer based upon my right to remain silent as guaranteed by the Constitutions of the United States and the State of Nevada.

There's a pending criminal action, sir.

Another representative excerpt of Francis's deposition is as follows:

[WYNN'S COUNSEL]. Are there any witnesses that have knowledge about your claimed pain, suffering, and emotional distress?

[FRANCIS]. Right to remain silent.

Q. Are you married?

A. Right to remain silent.

Q. Does anyone live in your home with you?

A. Right to remain silent.

Q. Do you have a father?

A. I think everyone has a father. Yes.

Q. Okay. Is he living?

A. Right to remain silent.

Q. What's his name?

A. Right to remain silent.

Q. Do you have a mother?

A. Yes. I believe everyone does.

Q. What's her name?

A. Right to remain silent.

After several hours of similar answers from Francis, the deposition concluded with Francis's counsel giving Wynn vague indications that Francis would try to promptly cure his deposition. Francis, however, made no attempt to cure his deposition or waive his privilege, and as stipulated by the parties' discovery plan, discovery closed on April 6, 2009. Around this time, Francis filed a motion with the discovery commissioner to reopen discovery, asserting that discovery should be extended because the case was still in its infancy.

In May 2009, Wynn filed a motion for summary judgment, accompanied by numerous affidavits and other documentary evidence showing that Francis owed $2 million and refuting the allegations contained in Francis's counterclaims. Wynn's motion pointed out that Francis had conducted no discovery—he took no depositions, hindered Wynn's ability to depose him, produced only a single document, and propounded no interrogatories. Thus, Wynn asserted that it was entitled to summary judgment based not only upon Francis's bad faith assertion of privilege but his failure to present any evidence contradicting Wynn's evidence.

Francis opposed Wynn's motion for summary judgment, asserting that a genuine issue of material fact existed regarding the

amount that he owed Wynn because he was entitled to a discount and Wynn had failed to mitigate its damages. In addition, he argued that discovery should be reopened because the discovery commissioner had recommended that discovery be extended. Francis's opposition also stated that he "may still cure any defects with regard to assertions of 5th Amendment privilege" and indicated that he had informed Wynn that he would cure his deposition. Francis submitted no affidavits or other evidence to rebut the evidence contained in Wynn's motion for summary judgment. Finally, Francis sought an NRCP 56(f) continuance to conduct discovery to oppose Wynn's motion. Francis's attorney submitted an affidavit in support of the NRCP 56(f) motion, stating that she wished to subpoena bank records and depose two individuals. She did not explain why Francis had not subpoenaed these records or deposed these individuals during discovery.

On June 8, 2009, during the hearing on Wynn's motion for summary judgment, Francis's counsel gave vague indications that Francis would like to withdraw his privilege. The district court stated, in pertinent part:

> [Y]ou can't use the 5th Amendment as a sword and a shield. You can't sit in a deposition and—what's your father's name? Right to remain silent. Do you have a cell phone? Right to remain silent. That's the most ridiculous exercise of the 5th Amendment I think I've ever seen.

Thereafter, the district court indicated that discovery would not be reopened and granted summary judgment against Francis on all claims and counterclaims. It found that Francis owed Wynn $2 million on the unpaid markers. The court determined that Francis had produced no evidence rebutting Wynn's evidence and that he had improperly asserted the Fifth Amendment privilege throughout his deposition. It also denied Francis's NRCP 56(f) motion for a continuance, noting that Francis had provided no explanation for his failure to undertake discovery or adequately explain how extending discovery would produce a genuine issue of material fact. This appeal followed.

## DISCUSSION

*Whether the district court abused its discretion in refusing to permit Francis to withdraw his invocation or in denying his request to reopen discovery*

Francis asserts that the district court penalized him for exercising his Fifth Amendment privilege against self-incrimination because it did not give him an opportunity to withdraw his privilege. He also contends that although his assertion of the privilege was

overbroad, the district court should have accommodated his privilege by granting his request to reopen discovery.[2] We disagree.

### Standard of review

Determining how to proceed in response to a civil litigant's request for accommodation of his or her Fifth Amendment privilege against self-incrimination is a matter within the discretion of the district court. *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 194 (3d Cir. 1994); *S.C. Johnson & Son, Inc. v. Morris*, 779 N.W.2d 19, 27 (Wis. Ct. App. 2009).

### Determining how to proceed in response to a civil litigant's request for accommodation of his or her privilege

The Fifth Amendment privilege against self-incrimination may be invoked in both criminal and civil proceedings. *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977). Exercise of the privilege may not be penalized. *Spevack v. Klein*, 385 U.S. 511, 515 (1967). Nonetheless, an invocation ''is not a substitute for relevant evidence'' and therefore, the invoking party is not ''freed from ad-

---

[2]In addition, Francis contends that the district court ''eviscerated'' his evidence, affirmative defenses, and counterclaims as a sanction for his invocation of the privilege. He asserts that this was an improper discovery sanction under the factors set forth in *Young v. Johnny Ribeiro Building*, 106 Nev. 88, 93, 787 P.2d 777, 780 (1990). Francis's premise is fundamentally flawed. The district court did not exclude any evidence—indeed, Francis never offered any evidence. Nor did the district court strike any of Francis's defenses or counterclaims. Rather, the district court entered summary judgment against Francis because he presented absolutely no evidence creating a genuine issue of material fact on Wynn's claims or his counterclaims. *Schuck v. Signature Flight Support*, 126 Nev. 434, 436, 245 P.3d 542, 544 (2010). Thus, at issue is whether the district court proceeded appropriately in response to Francis's request for accommodation when it refused to allow him to withdraw his invocation and denied his request to reopen discovery. *See U.S. v. 4003-4005 5th Ave., Brooklyn, NY*, 55 F.3d 78, 87 (2d Cir. 1995) (considering only whether the district court's exclusion of evidence previously claimed to be privileged was a proper response to civil litigant's invocation, although the secondary effect of the exclusion was entry of summary judgment). Accordingly, to the extent that the district court's actions can be considered discovery sanctions, they were not case concluding, and thus, *Young* and its progeny are not implicated. *See Bahena v. Goodyear Tire & Rubber Co.*, 126 Nev. 243, 249, 235 P.3d 592, 596 (2010) (explaining that a case concluding sanction is one which strikes an answer as to liability and damages); *Arnold v. Kip*, 123 Nev. 410, 418, 168 P.3d 1050, 1055 (2007) (utilization of the *Young* factors unnecessary where the sanctions imposed was only a dismissal without prejudice, even though the dismissal was, in effect, with prejudice due to the expiration of the statute of limitations on the underlying claim); *see also Meyer v. District Court*, 95 Nev. 176, 180, 591 P.2d 259, 262 (1979) (order excluding the invoking party's testimony unless she submitted to a deposition was not a sanction under the Nevada Rules of Civil Procedure).

ducing proof in support of a burden which would otherwise have been his." *United States v. Rylander*, 460 U.S. 752, 758, 761 (1983). Stated differently, "[a] party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence." *U.S. v. Taylor*, 975 F.2d 402, 404 (7th Cir. 1992). Thus, it is well-settled that a "claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation." *U.S. v. 4003-4005 5th Ave., Brooklyn, NY*, 55 F.3d 78, 83 (2d Cir. 1995).

We note, however, that courts must be mindful that because the privilege is constitutionally protected, they "must carefully balance the interests of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment." *Graystone Nash*, 25 F.3d at 192. Because we have not previously had the occasion to elaborate upon the various considerations that may, in certain circumstances, be relevant to striking this balance, we turn to guidance from federal caselaw.

Federal courts generally begin their analysis of a request for accommodation by examining the nature of the invocation. *See, e.g.*, *4003-4005 5th Ave.*, 55 F.3d at 84. Where the invoking party makes a timely request for accommodation of a legitimate self-incrimination concern, courts "should explore all possible measures" to accommodate the privilege. *Id.*

If the invoking party attempts to withdraw his or her invocation of the privilege, the manner and timing of the attempt becomes another important consideration. *Id.* at 84-85. Notably, an attempted withdrawal at the last minute of a proceeding strongly indicates that the invoking party is abusing his or her privilege in order to gain an unfair advantage. *Id.* at 85. In such a case, it may be appropriate for the trial court to take severe remedial measures, such as preventing the invoking party from presenting material previously claimed to be protected by the privilege. *Id.* at 86.

Next, federal caselaw instructs that the nature of the civil proceeding is often another significant consideration. *Id.* at 84. For example, a special effort to accommodate the privilege may be warranted where the defendant faces parallel civil and criminal proceedings brought by different governmental entities arising from the same set of facts. *See Graystone Nash*, 25 F.3d at 193-94 ("Courts must bear in mind that when the government is a party in a civil case and also controls the decision as to whether crimi-

nal proceedings will be initiated, special consideration must be given to the plight of the party asserting the Fifth Amendment.''). In such a case, the most appropriate manner in which to proceed in response to a timely request for accommodation of the privilege might be to grant a stay of the civil proceeding until the criminal matter is concluded. *S.E.C. v. Zimmerman*, 854 F. Supp. 896, 899 (N.D. Ga. 1993).

Finally, the extent of prejudice that the opposing party will incur if remedial action is not taken frequently becomes a dispositive consideration. *See, e.g.*, *4003-4005 5th Ave.*, 55 F.3d at 84. Extensive remedial measures generally may be taken where the opposing party would otherwise suffer substantial prejudice. *Id.* at 87; *see Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1089 (5th Cir. 1979) (trial courts are ''free to fashion whatever remedy is required to prevent unfairness'').

In sum, depending on the particular circumstances involved in a given case, a wide range of remedial measures may be taken when balancing the interests of the invoking party and the opposing party's right to fair treatment. *See 4003-4005 5th Ave.*, 55 F.3d at 84 n.6 (''What serves as an appropriate procedure for accommodating the interests of the party asserting the Fifth Amendment, while at the same time respecting opposing parties' right to fair treatment within the litigation, will necessarily vary from case to case.''); *United States v. U. S. Currency*, 626 F.2d 11, 16 (6th Cir. 1980) (explaining that a flexible approach is optimal because the trial court is in the best position to know what measures will balance the competing interests involved). With the foregoing principles in mind, we consider whether the district court abused its discretion in refusing to permit Francis to withdraw his invocation or in denying his request to reopen discovery.[3]

### How and when the privilege was invoked

Francis's invocation was overbroad. Although answering some of Wynn's questions at his deposition could have been incriminating, his refusal to answer nearly every question was unjustifiable. *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000) (''[I]n the civil context, the invocation of the priv-

---

[3]We recognize that because there is not an absolute right to reopen discovery in the first instance, denying a request to reopen discovery is arguably not a remedial measure at all. *See MGM Grand, Inc. v. District Court*, 107 Nev. 65, 70, 807 P.2d 201, 204 (1991) (noting that the district court has wide discretion in controlling pretrial discovery). We conclude, however, that the district court's denial of such a request is relevant to evaluating whether the court adequately accommodated the privilege.

ilege is limited to those circumstances in which the person invoking the privilege reasonably believes that his disclosures could be used in a criminal prosecution, or could lead to other evidence that could be used in that manner."). Additionally, there is no indication in the record that Francis ever requested the district court to accommodate his privilege. He never sought, for example, to have his deposition sealed or to have reasonable limits placed on its scope. *See U.S. v. Parcels of Land*, 903 F.2d 36, 45 (1st Cir. 1990) (where civil defendant did not inform the court of "his willingness to answer deposition questions if his motion to seal were granted," his argument that the district court failed to accommodate his privilege appeared "contrived," and striking the affidavit he offered in opposition to a motion for summary judgment was an appropriate remedial measure); *S.E.C. v. Softpoint, Inc.*, 958 F. Supp. 846, 856 (S.D.N.Y. 1997) (civil litigants have an "obligation to seek assistance from the Court" to accommodate a claim of privilege). Moreover, Francis was represented by counsel during the course of the proceedings below, undermining his claim, opportunistically made for the first time on appeal, that because the district court did not warn him of the ramifications that his improper invocation could have, he was oblivious to those consequences.[4] *Cf. Graystone Nash*, 25 F.3d at 192-94 (reversing order barring defendants from offering any evidence after they invoked the Fifth Amendment, in part because they appeared pro se and had no indication that raising their privilege was improper).

### How and when the privilege was attempted to be withdrawn

At the conclusion of Francis's deposition, his counsel told Wynn that Francis would promptly try to cure his deposition. But Francis made no such attempt.[5] Thereafter, in his opposition to Wynn's motion for summary judgment and at the hearing on Wynn's motion for summary judgment, Francis's counsel gave the district court only vague indications that Francis would be willing to withdraw his privilege. *See Softpoint*, 958 F. Supp. at 858 (precluding litigant from introducing affidavits to oppose a motion for sum-

---

[4]Francis cites *Meyer v. District Court*, 95 Nev. 176, 591 P.2d 259 (1979), for the proposition that the district court was required to warn him of the consequences of his invocation. *Meyer* did not hold that providing a warning is the only manner that an invocation can be accommodated in each and every situation. Moreover, *Meyer* did not involve a litigant's manipulative last-minute attempt to withdraw an overbroad invocation in order to oppose a motion for summary judgment, and therefore, *Meyer* is not instructive on whether the measures taken by the district court in this case were appropriate.

[5]Francis contends that Wynn should have taken steps to reconvene his deposition. We reject Francis's attempt to shift the burden to Wynn to renotice the deposition. It was incumbent upon Francis, not Wynn, to take the initiative to cure his deposition.

mary judgment where he "provided no firm commitment that he actually [would] submit to deposition should the Court accept his affidavits opposing summary judgment").

In addition, the timing and context of Francis's attempted withdrawal was problematic. Francis waited until Wynn moved for summary judgment to indicate to the district court that he might be willing to withdraw his privilege. This last-minute attempt suggests that Francis was abusing his privilege. *See 4003-4005 5th Ave.*, 55 F.3d at 86-87 (affirming order barring litigant's ability to present material he previously claimed was privileged because he attempted to withdraw his privilege only after faced with a motion for summary judgment); *Softpoint*, 958 F. Supp. at 857 (litigant's attempted withdrawal of his privilege three months after his opponent moved for summary judgment was " 'a manipulative "cat and mouse" approach to the litigation'—the type of conduct that warrants barring a defendant's testimony in opposition to summary judgment" (quoting *4003-4005 5th Ave.*, 55 F.3d at 85)); *see also In re Edmond*, 934 F.2d 1304, 1308 (4th Cir. 1991) ("[T]he Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support a summary judgment motion.").

### Nature of the proceeding

At the time of Francis's deposition, there was a criminal complaint pending against him in Las Vegas for theft and passing a check with the intent to defraud. Because the factual circumstances underlying the criminal complaint against Francis overlapped with the subject of Wynn's action, the nature of the civil proceeding presented a danger of self-incrimination. Nonetheless, because the civil action was brought by Wynn, Francis did not face the predicament of defending parallel civil and criminal proceedings brought simultaneously by governmental entities.

### Extent of prejudice to the opposing party

As discussed above, Francis asserted his Fifth Amendment privilege to nearly every question that Wynn posed during his deposition. Thus, Francis's tactics had already resulted in unnecessary expense to Wynn and probable delay in obtaining discovery documents. Wynn would have been further prejudiced if Francis were allowed to withdraw his invocation or reopen discovery because Wynn had been forced to conduct its discovery without the benefit of Francis's deposition. *See S.E.C. v. Merrill Scott & Associates, Ltd.*, 505 F. Supp. 2d 1193, 1211 (D. Utah 2007) (prejudice would result if litigant were allowed to withdraw his invocation at the last minute because the opposing party had developed its discovery without first being able to test the defendant's assertions);

*Softpoint*, 958 F. Supp. at 857 (where litigant forced opposing party "to bear the cost of a pointless deposition," permitting him to withdraw his privilege and submit an affidavit would result in prejudice because it would "effectively ambush" his opponent with "evidence, defenses, and denials that he concealed" until faced with a motion for summary judgment).

On balance, the relevant considerations weigh heavily in favor of the remedial measures taken by the district court to balance the parties' competing interests. Accordingly, we conclude that the district court did not abuse its discretion in refusing to permit Francis to withdraw his invocation or in denying his request to reopen discovery.

*Whether the district court abused its discretion in denying Francis's NRCP 56(f) motion for a continuance*

Francis asserts that the district court abused its discretion by denying his NRCP 56(f) motion for a continuance. He emphasizes that at the time he filed his motion, the case was only about one year old.

### *Standard of review*

The district court's refusal of an NRCP 56(f) continuance is reviewed for an abuse of discretion. *Aviation Ventures v. Joan Morris, Inc.*, 121 Nev. 113, 118, 110 P.3d 59, 62 (2005).

### *NRCP 56(f)*

NRCP 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

"[A] motion for a continuance under NRCP 56(f) is appropriate only when the movant expresses how further discovery will lead to the creation of a genuine issue of material fact." *Aviation Ventures*, 121 Nev. at 118, 110 P.3d at 62. Furthermore, if the movant has previously "failed diligently to pursue discovery," it is not an abuse of discretion for the district court to deny the motion. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 (9th Cir. 2001); *cf. Aviation Ventures*, 121 Nev. at 119, 110 P.3d at 63

(where movant was diligent in conducting discovery, the case was less than eight months old, and discovery had not started, the district court abused its discretion in not granting NRCP 56(f) motion).

Francis's NRCP 56(f) motion stated that he wished to discover facts in support of his affirmative defenses of laches and failure to mitigate damages.[6] In support of his motion, his attorney filed an affidavit stating that she wished to subpoena bank records and depose two individuals, but she did not explain why Francis had not previously subpoenaed these records or deposed these individuals during discovery. It is undisputed that during discovery Francis produced only a single document, conducted no depositions, and did not serve Wynn with a single request for production, request for admission, or interrogatory. In other words, Francis had not in any way diligently pursued discovery. Accordingly, although only about one year had passed between the filing of Wynn's complaint and the district court's entry of summary judgment, we conclude that the district court did not abuse its discretion by denying Francis's motion for an NRCP 56(f) continuance.

*Whether the district court erred in granting Wynn summary judgment*

Francis asserts that the district court improperly granted Wynn summary judgment. This assertion is unavailing.

*Standard of review*

We review de novo an order granting summary judgment. *Schuck v. Signature Flight Support*, 126 Nev. 434, 436, 245 P.3d 542, 544 (2010); *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005).

*Summary judgment*

Summary judgment is appropriate "when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, that are properly before the court demonstrate that no genuine issue of material fact [remains], and the moving party is entitled to judgment as a matter of law." *Wood*, 121 Nev. at 731, 121 P.3d at 1031. If the party moving for summary judgment will bear the

---

[6]We acknowledge that our review of Francis's NRCP 56(f) motion overlaps to a certain extent with our analysis of whether the district court failed to properly accommodate Francis's Fifth Amendment privilege by denying his request to reopen discovery. We nonetheless address these issues separately because a request for an extension of discovery under NRCP 56(f) involves a different legal analysis.

burden of persuasion at trial, that party "must present evidence that would entitle it to a judgment as a matter of law in the absence of contrary evidence." *Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 602, 172 P.3d 131, 134 (2007). If the nonmoving party will bear the burden of persuasion, the moving party "may satisfy the burden of production by either (1) submitting evidence that negates an essential element of the nonmoving party's claim, or (2) 'pointing out . . . that there is an absence of evidence to support the nonmoving party's case.' " *Id.* at 602-03, 172 P.3d at 134 (citation omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "In such instances, in order to defeat summary judgment, the nonmoving party must transcend the pleadings and, by affidavit or other admissible evidence, introduce specific facts that show a genuine issue of material fact." *Id.* at 603, 172 P.3d at 134.

In support of its motion for summary judgment on its claims, Wynn produced affidavits stating that Francis owed it $2 million on the unpaid markers and copies of the markers, which were made payable to Wynn and contained Francis's signature. Wynn also submitted e-mails sent by Francis in which he acknowledged his obligation to pay Wynn. Francis submitted no affidavits or admissible evidence to rebut Wynn's motion for summary judgment. Accordingly, Francis provided no "contrary evidence" that created genuine material issues of fact on Wynn's claims.[7] *See id.* at 602, 172 P.3d at 134.

In addition, Wynn produced evidence establishing that it did not induce Francis to gamble, alter the casino markers in any way, or engage in any of the activity that Francis alleged in his counterclaims. Wynn also correctly pointed out that Francis had submitted no evidence through affidavits or other admissible evidence to support his counterclaims. Therefore, Wynn was entitled to summary judgment on Francis's counterclaims because it negated the essential elements of Francis's counterclaims and successfully pointed out the absence of evidence supporting his case. *See id.* at 602-03, 172 P.3d at 134.

## CONCLUSION

The district court did not abuse its discretion in refusing to permit Francis to withdraw his invocation of his Fifth Amendment privilege against self-incrimination or in denying his request to re-

---

[7]Francis argues that the amount of Wynn's damages was not ascertained and therefore a genuine issue of material fact precluded entry of summary judgment. We decline to consider this argument because Francis did not cogently raise the issue in his opening brief; rather, he raised it for the first time in his reply brief, thereby depriving Wynn of a fair opportunity to respond. *See Weaver v. State, Dep't of Motor Vehicles*, 121 Nev. 494, 502, 117 P.3d 193, 198-99 (2005) (arguments raised for the first time in an appellant's reply brief need not be considered).

open discovery. Nor did the district court abuse its discretion in denying Francis's motion for a continuance under NRCP 56(f). Consequently, as Francis failed to demonstrate the existence of a genuine issue of material fact, the district court did not err in granting Wynn's motion for summary judgment. Accordingly, we affirm the summary judgment of the district court.

HARDESTY and PARRAGUIRRE, JJ., concur.