## In re AUCTION HOUSES ANTITRUST LITIGATION.

### No. 00 Civ. 0648 LAK.

United States District Court,
S.D. New York.

Oct. 3, 2000.

J. Douglas Richards, Milberg Weiss Bershad Hynes & Lerach LLP, New York City, Karen Morris, Morris & Morris, for Plaintiff in Kruman.

Philip Korologos, Boies, Schiller & Flexner, LLP, Armonk, NY, for Class Plaintiffs.

Shepard Goldfein, Clifford Aronson, Skadden, Arps, Slate,. Meagher & Flom, New York City, for Defendant Christie's International PLC.

William C. Komaroff, Scott W. Muller, Davis Polk & Wardwell, New York City, for Defendant A. Alfred Taubman.

Steven Reiss, David Lender, Weil, Gotshal & Manges, New York City, for Defendant Sotheby's.

John Siffert, Lankler Siffert & Wohl LLP, New York City, for Defendant Diana Brooks.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Although the press has reported that an agreement has been reached to settle these cases, subject to court approval, the proposed settlement (which has not yet been filed with the Court) in fact would not resolve two of the cases, *Kruman v. Christie's International*, 00 Civ. 6322(LAK), and *Burkle v. Christie's Inc.*, 00 Civ. 7018(LAK), which are brought on behalf of a class of persons who dealt with defendants abroad. Discovery still is underway in those actions, thus requiring this ruling.

### I

The general nature of this case is set forth in two prior opinions,[1] familiarity with which is assumed.

Christie's has produced handwritten notes from the files of its former chief executive officer, Christopher Davidge (the "Davidge Documents"), which apparently are important evidence of the alleged conspiracy. Defendant A. Alfred Taubman, former chairman of Sotheby's, served interrogatories on Christie's by which it sought a great many details concerning the Davidge Documents, including such details as their authors, the meaning of abbreviations used in them, the antecedents of pronouns (e.g., "our," "her," etc.) and the like. Christie's objected to substantially all of these interrogatories, principally on the ground that they "seek[ ] information that is not in [its] possession,

---

1. *In re Auction Houses Antitrust Litig.*, 193 F.R.D. 162 (S.D.N.Y.2000) (certifying class); *id.*, 197 F.R.D. 71 (S.D.N.Y.2000) (describing selection of lead counsel).

custody, or control."[2] In conversations among counsel, Christie's has taken the position that it cannot answer these interrogatories because the person with knowledge is Davidge, whom it allegedly no longer controls. Taubman disputes this assertion and seeks an order compelling Christie's to respond fully, including in its response information it contends is available to it from Davidge.

In late December 1999, Christie's International PLC entered into an agreement with Davidge concerning the termination of his employment (the "Agreement"). The Agreement provides for the payment by Christie's to Davidge of £5 million of which at least £2 million has not yet been paid. Christie's obligation to pay it is conditioned upon Davidge's performance of his contractual obligations. Further, paragraph 14 of the Agreement states:

> "You [i.e., Davidge] undertake promptly to provide all such information to the Company [Christie's] or its advisers or agents as is within your knowledge that may from time to time be required by the Company, in the discretion of the board of directors of the Company, in relation to the business of any Group Company during the period of your employment and to provide to the Company details of all matters, including all actual or potential transactions in respect of which the Company's knowledge rests solely or principally with you. You undertake further to co-operate promptly and fully in any ongoing investigations or enquiries relating to the business of any Group Company, subject to any reasonable objection raised by your legal advisers...."

Following the commencement of most of these actions, Christie's and Davidge entered into a so-called Indemnification and Joint Defence Agreement (the "Defence Agreement") whereby, broadly speaking, Christie's agreed to indemnify Davidge with respect to defense costs, fines, and liability in these cases as well as the pending grand jury investigation and actions arising therefrom in exchange for Davidge's cooperation. Paragraph 2 of the Defence Agreement provides in relevant part as follows:

> "Davidge agrees that, as part of his obligations of cooperation under the Termination Agreement, he will comply with such reasonable requests as shall be made of him by Christie's with respect to any matters concerning the Civil Litigation [i.e., those of these cases already pending] or Future Proceeding [which includes the *Kruman* action] including the conduct, defense or settlement of the Civil Litigation or Future Proceeding as well as, meeting with and providing information to such parties to the litigation as Christie's shall request ..."

## II

■ A party served with interrogatories is obliged to respond by "furnish[ing] such information *as is available to the party.*"[3] Christie's therefore is obliged to respond to the interrogatories not only by providing the information it has, but also the information within its control or otherwise obtainable by it.[4] Taubman maintains that information known to Davidge is available to Christie's by virtue of these agreements and that it therefore should be compelled to provide the information in Davidge's hands.

■ Christie's resists such relief. It says that it has requested Davidge to furnish the information and that Davidge has declined to do so, ostensibly on the ground that he fears that he might waive his privilege against self-incrimination by doing so. But Christie's does not say that it has done anything more than request Davidge to provide the information necessary to enable it to give complete and responsive answers to the interrogatories, this despite the fact that Davidge's reported refusal arguably breaches the agreements. So far as Christie's has indicated, it

---

2. It contended also that depositions were more appropriate means of obtaining the information and that it lacks sufficient information to respond.

3. Fed. R. Civ. P. 33(a) (emphasis added).

4. *See, e.g., Cullins v. Heckler,* 108 F.R.D. 172, 176–77 (S.D.N.Y.1985); 8A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure: Civil 2d §§ 2174, 2177 (2d ed.1994).

has not threatened to cease payments to him and his counsel or to consider its indemnification obligation as unenforceable in light of Davidge's position. Thus, it certainly has not exhausted the means at its disposal to procure a response from Davidge. Indeed, there is reason to suppose that Davidge's reticence is in Christie's interests. Yet Christie's argues the Court should not order it to respond with information known only to Davidge because it somehow would be unfair, or less than sporting, to place it in a position in which it might feel compelled to exert pressure on Davidge to provide the necessary information. But this is decidedly unpersuasive.

Davidge agreed to provide Christie's with information in his possession. He was not coerced to do so, except in the sense that the enormously valuable economic consideration that he stands to receive under the agreements of course might be expected to have had a certain persuasive force. By entering into those agreements, he knowingly and voluntarily subjected himself to the risk that a failure to provide information requested by Christie's might be a material breach of the agreements and excuse Christie's from any further obligation to perform, i.e., any obligation to pay or indemnify him. As he is reaping the benefits of his agreements with Christie's, it is far from clear that there is any reason why he should not be pressed to bear the burdens. And surely there is no reason for saying that Christie's should not be given a substantial incentive to seek his cooperation. In fact, the situation is somewhat analogous to that frequently encountered in respect of blocking statutes.

Many foreign countries have enacted statutes that prohibit their citizens and, often, persons subject to their jurisdiction from complying with discovery requests in U.S. litigation. Companies subject both to U.S. discovery demands and to foreign blocking statutes barring compliance often have invoked such statutes in resisting motions for orders compelling them or those subject to their control to produce information covered by the statutes. And while courts have taken different approaches to this question, the modern trend holds that the mere existence of foreign blocking statutes does not prevent a U.S. court from ordering discovery although it may be more important to the question of sanctions in the event that a discovery order is disobeyed by reason of a blocking statute.[5] In determining whether to enter an order compelling discovery, courts typically consider, among other factors, the national interests of the nations involved, the nature and extent of the hardship that would be imposed upon the discovery target if the two countries took inconsistent positions, the good faith or lack thereof of the party resisting the order, and whether a discovery order reasonably can be expected to achieve compliance.[6]

Here there is no countervailing United Kingdom governmental interest to be taken into account. Nor would Christie's be faced with serious adverse consequences in the United Kingdom if it were to take a firm position opposite Davidge. The worst that might happen is that Davidge could sue Christie's for breach of contract in the event it stops paying and indemnifying him, in which case Christie's would have the opportunity to defend on the ground that Davidge himself had breached the agreements by failing without reasonable excuse to provide the requested information. Indeed, given the lack of any obviously substantial cost to Christie's in pressing Davidge to respond, there is genuine ground to suspect Christie's good faith here. Thus, Christie's' position in resisting an order to respond is considerably weaker than that of one subject to a foreign blocking statute. Moreover, the economic incentive for Davidge is sufficiently substantial to offer a real possibility that the information would be forthcoming in response to a determined Christie's effort.

---

5. *See, e.g., Minpeco, S.A. v. Conticommodity Services, Inc.,* 116 F.R.D. 517 (S.D.N.Y.1987); 1 RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 442 (1987); Lewis A. Kaplan, *International Discovery in Antitrust Litigation*

§ 15.07 in 2 ANTITRUST COUNSELING AND LITIGATION TECHNIQUES (J.O. von Kalinowski ed.1996).

6. *Id.*

To be sure, the blocking statute cases lack one feature present here: Christie's' professed concern for Davidge's alleged Fifth Amendment rights. But it is not clear that its concern is well grounded. To begin with, it is far from self-evident either that the Fifth Amendment (a) protects Davidge against an economic inducement from his former employer to provide it with information, or in any case (b) would be violated by an economic incentive as opposed to a legal compulsion to testify. Further, in view of reports that Christie's has obtained conditional amnesty in the pending grand jury investigation for itself and its personnel, it is not clear that Davidge is at any real risk at all.[7] In any case, it certainly is not inappropriate to order Christie's to respond and, if it does not, then to consider later the efforts that it has made to secure Davidge's cooperation and the reasons for any failure in determining whether the imposition of sanctions is appropriate and, if so, what those sanctions should be.

Accordingly, Christie's shall answer all of the interrogatories referred to in the letter of Taubman's counsel, dated September 19, 2000, fully and completely on or before October 14, 2000, including in its response information known to Davidge. Should it fail to do so, the Court will entertain an application by Taubman for sanctions and other relief.

SO ORDERED.

---

**7.** The manual of the Antitrust Division of the Department of Justice makes clear that amnesty for one in Davidge's position is available only if he "admit[s his] wrongdoing with candor and completeness and continues to assist the Division throughout the investigation." United States Dept. of Justice, Antitrust Division Manual, c. 3, § F9(a)(iii) (available on Internet at <http://www.usdoj.gov/atr/foia/divisionmanual/ch3.html#f9a>) (visited Oct. 3, 2000). Thus, it is debatable whether Davidge has any Fifth Amendment privilege to assert although the Court does not now decide that question.