ASPEN FINANCIAL SERVICES, INC., A NEVADA CORPORATION; ASPEN FINANCIAL SERVICES, LLC, A NEVADA LIMITED LIABILITY COMPANY; ASPEN BAY FINANCIAL, LLC, A NEVADA LIMITED LIABILITY COMPANY; AND JEFFREY B. GUINN, AN INDIVIDUAL, PETITIONERS, *v.* THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE MARK R. DENTON, DISTRICT JUDGE, RESPONDENTS, AND KENNETH GRAGSON AND YVONNE GRAGSON, TRUSTEES OF THE KENNETH GRAGSON AND YVONNE GRAGSON FAMILY TRUST; NORTH MAIN, LLC, A NEVADA LIMITED LIABILITY COMPANY; BONNIE H. GRAGSON AND KENNETH RAY GRAGSON, TRUSTEES OF THE GRAGSON 1988 TRUST; RODNEY F. REBER, AS GENERAL PARTNER OF THE RODNEY F. REBER FAMILY LIMITED PARTNERSHIP; LINDA REBER, INDIVIDUALLY; LOIS LEVY, TRUSTEE OF THE LOIS LEVY FAMILY TRUST, DTD 2/11/93; CHARLES E. THOMPSON, TRUSTEE OF THE CHARLES E. THOMPSON 1989 TRUST; CONNIE LAVERNE THOMPSON, INDIVIDUALLY AND AS TRUSTEE OF THE CONNIE LAVERNE THOMPSON FAMILY TRUST, DTD 12/12/05; DAWN J. GERKE, TRUSTEE OF THE BLAKELY CHARITABLE REMAINDER TRUST, DTD 5/2/97; JAMES B. GERKE AND DAWN J. GERKE, TRUSTEES OF THE BYRON TRUST, DTD 5/2/85; DAVID J. WILLDEN, TRUSTEE OF THE DAVID J. WILLDEN CHARITABLE REMAINDER UNI TRUST DATED 12/23/87; CHERYL ROGERS-BARNETT AND LARRY BARNETT, TRUSTEES OF THE ROGERS-BARNETT FAMILY TRUST, DTD 11/28/03; DAVID A. SMITH, AN INDIVIDUAL; KIRSTI D. RICE, TRUSTEE OF THE RICE GRANDCHILDREN EDUCATION TRUST; RUSSELL DAVIES, AN INDIVIDUAL; JOY DAVIES, AN INDIVIDUAL; AND CHARLES BEARUP AND BERNARDINE BEARUP, REAL PARTIES IN INTEREST.

No. 58184

December 6, 2012                                289 P.3d 201

*Bailey Kennedy* and *John R. Bailey, Joseph A. Liebman*, and *Brandon P. Kemble*, Las Vegas, for Petitioners.

*Woods Erickson Whitaker & Maurice LLP* and *Aaron R.'* *Maurice* and *Justin S. Hepworth*, Henderson, for Real Parties in Interest.

*Murchison & Cumming, LLP*, and *Michael J. Nunez* and *Maria D. Toto*, Las Vegas, for Amici Curiae Stephen Quinn and Victoria Quinn.

*Pico Rosenberger* and *James R. Rosenberger*, Las Vegas, for Amicus Curiae Today's Realty, Inc.

*Prince & Keating* and *Dennis M. Prince* and *Douglas J. Duesman*, Las Vegas, for Amici Curiae Donna Ruthe, et al.

## OPINION

By the Court, SAITTA, J.:

Parties facing a civil proceeding and a simultaneous criminal investigation often confront unpleasant choices. They may, for instance, be put to the choice of providing testimony in the civil proceeding that might be used by criminal investigators, or asserting their Fifth Amendment privilege against self-incrimination to the detriment of their defense of the civil suit. Yet while such a situation may require a party to make difficult decisions, and although the district court has the power to stay the civil proceeding in the interest of fairness, it is constitutionally permissible for both matters to proceed concurrently. Ultimately, the district court's determination regarding whether a stay is warranted is a discretionary decision that comes at the end of a careful balancing of the interests involved. Here, after evaluating the factors relevant to this determination, we conclude that the district court did not abuse its discretion in denying petitioners' motion to stay.

### *FACTS*

Petitioners Aspen Financial Services, Inc.; Aspen Financial Services, LLC; Aspen Bay Financial, LLC; and Jeffrey B. Guinn (collectively, when possible, "the Aspen defendants") are corporate entities and an individual that service and broker loans for the acquisition and development of real property in Southern Nevada. In 2005 and 2006, dozens of investors, including real parties in interest Kenneth and Yvonne Gragson, et al. (collectively, "the Gragson plaintiffs"), provided millions of dollars to the Aspen defendants to finance loans for the development of certain real property located in Las Vegas known as the Milano property. In 2008, one of these loans went into default, and the Gragson plaintiffs and other investors suffered substantial losses. Although the Aspen defendants attributed these losses to the general decline in the Las Vegas real estate market, the Gragson plaintiffs believed that the

Aspen defendants had defrauded them by operating, in essence, a real estate Ponzi scheme. The Gragson plaintiffs therefore brought suit against the Aspen defendants in district court.

After nearly all other discovery had been completed, the Gragson plaintiffs noticed the depositions of Sean Corrigan, the president of one of the corporate Aspen defendants, and Jeffrey Guinn, one of the individual Aspen defendants. Shortly before these depositions were to be taken, the Aspen defendants filed a motion with the district court to stay any depositions and written discovery that would require their employees and officers or Guinn to make testimonial statements. The Aspen defendants asserted that the Federal Bureau of Investigation (F.B.I.) had initiated a criminal investigation into their activities at the behest of the Gragson plaintiffs. They further asserted that they had been served with a federal grand jury subpoena seeking information about various subjects, including the loans for the Milano property. In addition, the Aspen defendants argued that the Gragson plaintiffs had been, and would continue, funneling discovery obtained in the civil proceeding to the F.B.I. After an extensive hearing, the district court issued a written order summarily denying the motion without prejudice. The Aspen defendants now petition this court for a writ of mandamus or prohibition directing the district court to grant their motion to stay.

## DISCUSSION

Because writ relief is an extraordinary remedy, "the decision to entertain a writ petition lies within our discretion." *Haley v. Dist. Ct.*, 128 Nev. 171, 175, 273 P.3d 855, 858 (2012). "A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station or to control an arbitrary or capricious exercise of discretion." *International Game Tech. v. Dist. Ct.*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008) (citations omitted); NRS 34.160. A writ of prohibition, in turn, "serves to stop a district court from carrying on its judicial functions when it is acting outside its jurisdiction." *Sonia F. v. Dist. Ct.*, 125 Nev. 495, 498, 215 P.3d 705, 707 (2009); NRS 34.320. Neither form of relief is available when an adequate and speedy legal remedy exists. NRS 34.170; NRS 34.330. And, although "a writ of prohibition is a more appropriate remedy for the prevention of improper discovery," *Valley Health System v. Dist. Ct.*, 127 Nev. 167, 171 n.5, 252 P.3d 676, 678 n.5 (2011), we have explained that "writs are generally not available to review discovery orders." *Id.* at 171, 252 P.3d at 678. In some narrow instances, however, writ relief may be available when it is necessary to prevent discovery that would cause privileged information to irretrievably lose its confidential nature and

thereby render a later appeal ineffective. *Id.* at 171-72, 252 P.3d at 678-79; *Wardleigh v. District Court*, 111 Nev. 345, 350-51, 891 P.2d 1180, 1183-84 (1995).

Here, if discovery is not stayed, Guinn, in particular, will face a difficult choice when the Gragson plaintiffs depose him. He can either waive his Fifth Amendment privilege and risk revealing incriminating information to criminal investigators, *see Volmar Distributors v. New York Post Co.*, 152 F.R.D. 36, 39-40 (S.D.N.Y. 1993), or he can assert his privilege and forego the opportunity to deny the allegations against him under oath, thereby "effectively forfeiting the civil suit." *See id.* at 39. Thus, there may not be an adequate remedy here, apart from writ relief, if, as the Aspen defendants claim, the district court improperly denied their motion to stay. *See Valley Health*, 127 Nev. at 172, 252 P.3d at 679 (writ relief may be available to prevent the discovery of allegedly privileged materials "because once such information is disclosed, it is irretrievable"); *Meyer v. District Court*, 95 Nev. 176, 177, 591 P.2d 259, 260 (1979) (considering a petition for a writ of prohibition seeking to bar the enforcement of a district court order that precluded a party from testifying at a custody hearing unless the party waived her Fifth Amendment privilege and answered certain discovery questions); *see also Brunzell Constr. v. Harrah's Club*, 81 Nev. 414, 419, 404 P.2d 902, 905 (1965) (holding that an order granting or denying a stay of proceedings is not appealable), *superseded by statute as stated in Casino Operations, Inc. v. Graham*, 86 Nev. 764, 765, 476 P.2d 953, 954 (1970). Accordingly, we exercise our authority to entertain this writ petition.

*The district court did not abuse its discretion in denying the Aspen defendants' motion to stay*

"Determining how to proceed in response to a civil litigant's request for accommodation of his or her Fifth Amendment privilege against self-incrimination is a matter within the discretion of the district court." *Francis v. Wynn Las Vegas*, 127 Nev. 657, 664, 262 P.3d 705, 710 (2011). Therefore, the denial of a motion to stay civil proceedings made in connection with such a request is reviewed for an abuse of discretion. *Federal Sav. and Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989).

At the outset, we note that the corporate Aspen defendants enjoy no Fifth Amendment privilege against self-incrimination. *See Afro-Lecon, Inc. v. U.S.*, 820 F.2d 1198, 1206 (Fed. Cir. 1987) ("It is well settled that a corporation does not possess a fifth amendment right against self-incrimination."). They nonetheless argue that a stay should be extended to them because they would

not otherwise be able to defend themselves if their employees, officers, and Guinn are forced to assert their privilege against self-incrimination. While stays are occasionally extended to encompass corporate defendants under some circumstances, *see, e.g.*, *Volmar*, 152 F.R.D. at 42, the corporate Aspen defendants' argument presupposes that a stay was necessary as to their employees, officers, and Guinn. For the reasons explained below, we believe that the district court acted well within its discretion in determining that such a stay was unnecessary.

As we have recognized, "[t]he Fifth Amendment privilege against self-incrimination may be invoked in both criminal and civil proceedings." *Francis*, 127 Nev. at 664, 262 P.3d at 711. A predicament arises, however, when a litigant invokes his or her privilege due to parallel civil and criminal matters:

> When parallel civil and criminal actions arising from the same transactions or issues have been instituted, a court is faced with a dilemma. On the one hand, a parallel civil proceeding can vitiate the protections afforded the accused in the criminal proceeding if the prosecutor can use information obtained from him through civil discovery or testimony elicited in the civil litigation. This also may cause him to confront the prospect of divulging information which may incriminate him. On the other hand, the pendency of a parallel criminal proceeding can impede the search for truth in the civil proceeding if the accused resists disclosure and asserts his privilege against self-incrimination and thereby conceals important evidence.

Milton Pollack, Sr. J., U.S. Dist. Ct., S.D.N.Y., Parallel Civil and Criminal Proceedings, 129 F.R.D. 201, 202 (Oct. 17-19, 1989).

To resolve this dilemma, we have instructed the courts of this state to, upon timely motion, balance the divergent interests implicated when a civil litigant invokes the Fifth Amendment. *Francis*, 127 Nev. at 665, 262 P.3d at 711. One of the tools that trial courts have at their disposal to strike this balance is to stay the civil proceeding until the criminal matter is concluded. *Id.* Recently, in *Francis*, we noted that an accommodation of a party's Fifth Amendment privilege may be particularly appropriate "where the defendant faces parallel civil and criminal proceedings brought by different governmental entities arising from the same set of facts." *Id.* But because the litigant claiming Fifth Amendment protection in *Francis* never moved the district court for the particular accommodation of a stay of the civil proceeding, *id.* at 665-66, 262 P.3d at 712, our analysis focused on the factors that bear on whether other remedial measures should have been taken. *Id.* at 666, 262 P.3d at 711-12. Here, in contrast, the Aspen defendants sought the

specific accommodation of a stay of the civil proceedings. Because this specific accommodation has not been addressed by this court, we are essentially working from a blank slate with respect to the pivotal question presented in this petition. As such, we look to other jurisdictions for guidance.

Courts in other jurisdictions have explained that although the district court has the power to stay a civil proceeding due to a pending criminal investigation, "a defendant has no constitutional right to a stay simply because a parallel criminal proceeding is in the works." *Microfinancial, Inc. v. Premier Holidays Intern.*, 385 F.3d 72, 77-78 (1st Cir. 2004); *see also Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012) (observing that while the district court may stay a civil proceeding due to a related criminal matter, "the Constitution rarely, if ever, *requires* such a stay"); *Molinaro*, 889 F.2d at 902 ("While a district court may stay civil proceedings pending the outcome of parallel criminal proceedings, such action is not required by the Constitution."). Courts have also observed that a stay of civil discovery pending the outcome of a related criminal matter should not be granted lightly because it "is an extraordinary remedy appropriate for extraordinary circumstances." *Weil v. Markowitz*, 829 F.2d 166, 174 n.17 (D.C. Cir. 1987). Thus, "[a] movant must carry a heavy burden" in order to demonstrate that a stay is warranted. *Microfinancial*, 385 F.3d at 77; *see Alcala v. Texas Webb County*, 625 F. Supp. 2d 391, 397-98 (S.D. Tex. 2009) ("[T]here is a strong presumption in favor of discovery, and it is the party who moves for a stay that bears the burden of overcoming this presumption.").

Determining whether to grant such a stay is a fact-intensive, case-by-case determination that requires a delicate balancing of the "competing interests involved in the case." *Molinaro*, 889 F.2d at 902. This inquiry "is highly nuanced," *Microfinancial*, 385 F.3d at 78, and has given rise to "a complex area of jurisprudence." *State ex rel. Wright v. Stucky*, 517 S.E.2d 36, 41 n.7 (W. Va. 1999). Against this backdrop, the Ninth Circuit Court of Appeals has set forth a comprehensive framework for analyzing whether to grant a stay. *Keating v. Office of Thrift Supervision*, 45 F.3d 322 (9th Cir. 1995). Under this framework, courts should analyze " 'the extent to which the defendant's fifth amendment rights are implicated,' " *id.* at 324 (quoting *Molinaro*, 889 F.2d at 902), as well as the following nonexhaustive factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with [the] litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the manage-

ment of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Id.* at 325.

This framework, or minor variations thereof, has been adopted by several jurisdictions. *See, e.g., Alcala*, 625 F. Supp. 2d at 398-99; *S.E.C. v. Nicholas*, 569 F. Supp. 2d 1065, 1068-69, 1072 (C.D. Cal. 2008); *Sterling Nat. Bank v. A-1 Hotels Intern., Inc.*, 175 F. Supp. 2d 573, 576 (S.D.N.Y. 2001); *Avant! Corp. v. Superior Court*, 94 Cal. Rptr. 2d 505, 510-11 (Ct. App. 2000); *King v. Olympic Pipeline Co.*, 16 P.3d 45, 52-53 (Wash. Ct. App. 2000). Because this framework carefully accounts for the interests that are involved when a party brings a motion to stay in connection with a request for accommodation of their Fifth Amendment privilege, we believe that it supplies the appropriate rubric for considering such motions.[1] Having identified the salient principles that guide our resolution of this petition, we now apply them.

### *Implication of the Fifth Amendment privilege*

The extent to which a party's Fifth Amendment privilege against self-incrimination is implicated is generally determined by reference to the overlap between the civil and criminal cases and the status of the criminal matter. *Alcala*, 625 F. Supp. 2d at 400. The degree of overlap between the issues in the civil and criminal matters has been described as "[t]he most important factor at the threshold" in considering whether to grant a stay. Pollack, *supra*, at 203. The extent of overlap is relevant because "[i]f there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay." *Trustees of Plumbers Pen.*

---

[1]The Aspen defendants suggest that the district court erred in not considering each of these factors in its written order denying their motion to stay. Although the district court did not expressly analyze each of these factors in its written order, the transcript of the hearing on the motion demonstrates that the district court considered the relevant factors and provides a clear insight into why the court denied the motion. *See Holt v. Regional Trustee Services Corp.*, 127 Nev. 886, 895, 266 P.3d 602, 608 (2011) (oral pronouncements on the record may be used by a reviewing court to construe an order that is silent on a point); *see also Microfinancial*, 385 F.3d at 77 (concluding that the district court did not err in declining to issue written findings of fact and conclusions of law along with its denial of a motion to stay; "a reviewing court ordinarily may assume that the judge gave careful consideration to the motion and weighed the appropriate factors"). Further, although the district court's order focused on the lack of an indictment, and although that factor alone is not dispositive, the district court's denial of a stay was not an abuse of discretion when the lack of indictment is viewed in the context of the other factors, which is addressed in the discussion that follows.

*Fund v. Transworld Mech.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995). Conversely, a significant overlap increases the risk of self-incrimination and heightens the need for a stay. *Alcala*, 625 F. Supp. 2d at 400 n.8. "Thus a stay is most appropriate where the subject matter of the parallel civil and criminal proceeding or investigation is the same." *King*, 16 P.3d at 55.

Here, the criminal investigation involves the loans for the Milano property, and the Aspen defendants appear to be the targets of this investigation. This is confirmed by the undisputed facts that the Gragson plaintiffs contacted the F.B.I. and that investigators specifically requested that the Gragson plaintiffs provide information regarding various aspects of these loans. Additionally, the Aspen defendants were served with a federal grand jury subpoena requesting documentation of the loans for the Milano property. In other words, there appears to be significant overlap between the subjects of the Gragson plaintiffs' lawsuit and the criminal investigation.

Turning to the status of the criminal matter, we note that the need for a stay is "far weaker" when, as here, "[n]o indictment has been returned." *Securities & Exchange Com'n v. Dresser Indus.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980). As a general rule, preindictment requests for a stay are denied "because there is less risk of self-incrimination, and more uncertainty about the effect of a delay on the civil case." *Walsh Securities v. Cristo Property Management*, 7 F. Supp. 2d 523, 527 (D.N.J. 1998); *see King*, 16 P.3d at 56 ("Where there is not yet a formal charge, resolution of the criminal matter may be so remote it should not be awaited."). This is not to say, however, that a motion to stay that is brought before the issuance of an indictment should be denied solely on that ground. *See, e.g., Chao v. Fleming*, 498 F. Supp. 2d 1034, 1038 (W.D. Mich. 2007) ("[A] stay should not be categorically denied solely because the defendant has not yet been indicted."); *Sterling*, 175 F. Supp. 2d at 576-77 (the general rule that a stay should only be granted after the defendant seeking a stay has been indicted "is, at best, a guide to the exercise of discretion, and not a hard-and-fast rule"); *King*, 16 P.3d at 56 ("[C]onditioning a stay upon the presence of an indictment is contrary to both law and common sense." (citation omitted)). Indeed, "[t]here is no question that a court has discretion to stay a civil litigation even in favor of a pending investigation that has not ripened into an indictment." *Sterling*, 175 F. Supp. 2d at 577.

The touchstone for evaluating a preindictment motion to stay is considering whether "special circumstances" justify granting a stay despite the absence of an indictment. One such instance is

where the issuance of a formal indictment is "an eventuality." *See, e.g., Chao,* 498 F. Supp. 2d at 1039 (internal quotation marks omitted). Another circumstance in which a preindictment stay may be warranted is where the government has initiated the civil proceeding and also controls the simultaneous criminal investigation. *See, e.g., S.E.C. v. Healthsouth Corp.,* 261 F. Supp. 2d 1298, 1326 (N.D. Ala. 2003). In such a circumstance, "the government itself has an opportunity to escalate the pressure on defendants by manipulating simultaneous civil and criminal proceedings" and, as a result, "there is a special danger that the government can effectively undermine rights that would exist in a criminal investigation by conducting a de facto criminal investigation using nominally civil means." *Sterling,* 175 F. Supp. 2d at 578-79.

The Aspen defendants attempt to persuade us that the same danger is present here, pointing out that the Gragson plaintiffs have been, and might attempt to continue, funneling discovery obtained in the civil proceeding to criminal investigators. They also point out that the Gragson plaintiffs reported the Aspen defendants' alleged wrongdoing to the F.B.I., which prompted it to open its investigation. Further, they allege that the interaction between the Gragson plaintiffs and the F.B.I. is in bad faith and improper. In essence, the Aspen defendants contend that the Gragson plaintiffs' lawsuit is simply a conduit for the F.B.I.'s investigation. These contentions by the Aspen defendants lack support from the record. Further, as articulated below, bad faith and impropriety do not automatically arise when a plaintiff shares with criminal investigators the information that surfaced during a civil action and the government is not a party to both the criminal and civil proceedings.

As courts in other jurisdictions have recognized, there is "no reason why those victims who have the resources and willingness to pursue their own investigation and enforce their own rights should be precluded either from doing so or from sharing the fruits of their efforts with law enforcement agencies." *International Business Machines Corp. v. Brown,* 857 F. Supp. 1384, 1389 (C.D. Cal. 1994); *see King,* 16 P.3d at 58 (where "[t]here is no indication that prosecutors seek to control—as opposed to benefit from—civil discovery," it is not problematic for the government to "seek to obtain the results of civil discovery"). And, as one court aptly noted, "it would be perverse if plaintiffs who claim to be the victims of criminal activity were to receive slower justice than other plaintiffs because the behavior they allege is sufficiently egregious to have attracted the attention of the criminal authorities." *Sterling,* 175 F. Supp. 2d at 575.

More importantly, the possibility that a private plaintiff may share information with the government "is hardly the same thing" as the situation in which the government is a party in parallel criminal and civil proceedings. *Id.* at 579. After all, it must be re-

membered that private entities and the government have differing interests. *Id.* Next, despite the Aspen defendants' invitation for us to do so, courts cannot assume that a civil plaintiff's lawsuit "is simply a stalking horse for the government's criminal inquiry, rather than a good faith effort to obtain compensation for their own private injuries." *Id.*; *see Brown*, 857 F. Supp. at 1388 ("Mere allegations of prosecutorial impropriety, with no supporting evidence, are insufficient to support a stay."). Based on the scant supporting evidence in the record before us, we cannot conclude that the Gragson plaintiffs and the government have entered into an improper arrangement.[2] Importantly, if actual evidence of such an arrangement should later surface or if the circumstances otherwise change, the Aspen defendants remain free to renew their motion to stay because the district court astutely denied their motion without prejudice. Although the degree of overlap between the civil and criminal matters demonstrates that the Aspen defendants' self-incrimination concerns are perhaps not simply fanciful, their fears are largely speculative and uncertain given the absence of (1) a criminal indictment and (2) evidence to support the contention that the F.B.I. and Gragson plaintiffs acted improperly and in bad faith such that the civil suit is a conduit for the F.B.I.'s investigation. As a result, the Aspen defendants failed to show additional circumstances to justify departing from the general rule that a stay should only be granted after a party seeking it has been indicted.

### *Plaintiffs' interests and potential prejudice*

The Aspen defendants' concerns are further offset by the prejudice that a stay would cause to the interests of the Gragson plaintiffs. Plaintiffs to civil suits have "an obvious interest in proceeding expeditiously," *Microfinancial, Inc. v. Premier Holidays Intern.*, 385 F.3d 72, 78 (1st Cir. 2004), and "[t]his is particularly true in the context of complex litigation which must proceed in an efficient manner." *Digital Equipment Corp. v. Currie Enterprises*, 142 F.R.D. 8, 12 (D. Mass. 1991). The delay resulting from a stay may also "duly frustrate a plaintiff's ability to put on an effective case" because as time elapses, "witnesses become unavailable, memories of conversations and dates fade, and documents can be lost or destroyed." *Alcala v. Texas Webb County*, 625 F. Supp. 2d 391, 405 (S.D. Tex. 2009). In addition, because plaintiffs are often "entitled to preserve the fact that they were deprived of in-

---

[2]The evidence shows that the Gragson plaintiffs reported the Aspen defendants' alleged fraud to the F.B.I. and provided the F.B.I. with documents regarding the loans for the Milano property. Further, the Gragson plaintiffs do not contest that they have, and will continue, to share with the F.B.I. information gained from discovery. This evidence merely shows that the Gragson plaintiffs are lawfully sharing with the F.B.I. information surfacing from the civil proceeding. This evidence does not demonstrate impropriety or bad faith.

formation'' due to a defendant's invocation, a stay may impede a plaintiff's ability to obtain these ''negative inferences.'' *In re CFS-Related Securities Fraud Litigation*, 256 F. Supp. 2d 1227, 1239 (N.D. Okla. 2003).

The delay caused by a stay would greatly prejudice the Gragson plaintiffs' ability to present an effective case in view of the complex nature of their claims. *See Brown*, 857 F. Supp. at 1391 (observing that the complexity of proving business fraud weighs heavily against staying such cases). In addition, because many of the Gragson plaintiffs are elderly, a stay could effectively prevent them from testifying. *See D'Ippolito v. American Oil Company*, 272 F. Supp. 310, 312 (S.D.N.Y. 1967) (denying a motion to stay a civil proceeding pending resolution of a parallel criminal matter where certain witnesses were ''of advanced years''). A stay would also delay or preclude the Gragson plaintiffs' ability to draw the adverse inference of the Aspen defendants' invocation—that is, that they were deprived of information by central figures in the civil proceedings.[3] Thus, the prejudice that a stay would pose to the Gragson plaintiffs is acute.

### Burdens on the defendants

We have already alluded to some of the burdens on the Aspen defendants. The primary burden posed by parallel criminal and civil matters is the danger of undermining a defendant's Fifth Amendment privilege against self-incrimination. This danger has been articulated as follows:

On the one hand, if [a defendant] invokes his constitutional privilege during civil discovery, not only does this prevent

---

[3]Though the Aspen defendants detest the practice, there is no question that under certain circumstances, the district court may, without running afoul of the Fifth Amendment, instruct the jury that it is permitted to draw an adverse inference from a defendant's invocation. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (''[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.''). We caution, however, that such an inference may be drawn only ''when independent evidence exists of the fact to which the party refuses to answer.'' *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000). Though not binding on this court, the court in *King v. Olympic Pipeline Co.*, 16 P.3d 45, 54 (Wash. Ct. App. 2000), provides guidance by expressing that an adverse inference arising from a defendant's invocation, and its effect on the defendant's interest, should be considered when balancing the competing interests involved in this type of case. Here, to the extent that an adverse inference may be drawn and detrimentally affect the Aspen defendants, such an effect does not change this court's conclusion that a stay is not warranted in light of the other factors that disfavor a stay.

him from adequately defending his position, but it may subject him to an adverse inference from his refusal to testify. On the other hand, if [a defendant] fails to invoke his Fifth Amendment privilege, he waives it, and any evidence adduced in the civil case can then be used against him in the criminal trial.

*Volmar Distributors v. New York Post Co.*, 152 F.R.D. 36, 39-40 (S.D.N.Y. 1993) (citations omitted). In addition, continuing with civil discovery in the face of a criminal investigation may burden a defendant because, by invoking the privilege to certain questions, a defendant may inadvertently "reveal[ ] his weak points to the criminal prosecutor." *Afro-Lecon, Inc. v. U.S.*, 820 F.2d 1198, 1203 (Fed. Cir. 1987). Other burdens include the diversion of resources needed to defend a possible criminal action, *White v. Mapco Gas Products, Inc.*, 116 F.R.D. 498, 502 (E.D. Ark. 1987), or "the likelihood that the materials unearthed during civil discovery may eventually inure to the benefit of the government prosecution," thereby effectively broadening the scope of criminal discovery.[4] *King v. Olympic Pipeline Co.*, 16 P.3d 45, 58 (Wash. Ct. App. 2000).

To be sure, these are heavy burdens. But the fact remains that there is no firm indication as to when the F.B.I.'s investigation began, what priority has been assigned to it, or whether the government has attempted to interview the Aspen defendants. As such, there is no way to intelligently predict how long the investigation may last, much less whether it will in fact culminate in a criminal prosecution. The burdens on the Aspen defendants are, therefore, essentially a matter of conjecture at this stage. *See Sterling Nat. Bank v. A-1 Hotels Intern., Inc.*, 175 F. Supp. 2d 573, 577 (S.D.N.Y. 2001) (a preindictment motion to stay "must be balanced significantly differently" than a post-indictment motion because although "many of the same risks to the civil defendant are present, the dangers are at least somewhat more remote, and it is inherently unclear . . . just how much the unindicted defendant really has to fear"). Thus, while we do not take lightly the burdens that the Aspen defendants may ultimately face, at this point, there is only a faint possibility that these dangers will be manifested.

---

[4] The Aspen defendants assert that the media attention on this case presents a substantial burden to their interests. This fact, however, "may weigh either for or against a stay." *King*, 16 P.3d at 59. In *Keating v. Office of Thrift Supervision*, for example, the court held that an "inordinate amount of media attention given to the case" weighed against a stay since this attention implicated the public's confidence and interest in the resolution of the civil proceeding. 45 F.3d 322, 326 (9th Cir. 1995). Here, any media attention only heightens the public's interest in an efficient resolution to this matter, such that the media attention disfavors a stay.

## Convenience and efficiency of the district court

The Aspen defendants' concerns ring especially hollow when juxtaposed with the district court's interest in convenience and efficiency. The district court's interest is, of course, "deserving of substantial weight." *Microfinancial, Inc. v. Premier Holidays Intern.*, 385 F.3d 72, 79 (1st Cir. 2004). "[C]onvenience of the courts is best served when motions to stay proceedings are discouraged."[5] *U.S. v. Private Sanitation Industry Ass'n*, 811 F. Supp. 802, 808 (E.D.N.Y. 1992). In addition, "a policy of freely granting stays solely because a litigant is defending simultaneous multiple suits would threaten to become a constant source of delay and an interference with judicial administration." *Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980). Furthermore, the district court's interest in expeditiously resolving lawsuits is intensified in complex litigation. *In re CFS-Related Securities Fraud Litigation*, 256 F. Supp. 2d 1227, 1241 (N.D. Okla. 2003).

It is worth reiterating that because no indictments have been issued, a stay here would have an indefinite, and likely protracted, duration. And, although the Aspen defendants emphasize that they seek only to stay a narrow portion of discovery, the individuals whom they seek to prevent from being deposed are central to the alleged fraud, and virtually all other discovery has been completed. Thus, even if a stay were applied in the manner proposed by the Aspen defendants, it would all but grind this case to a halt. *See Sterling*, 175 F. Supp. 2d at 579 (noting that even when a party seeks to stay only "particular depositions," such relief "effectively stops the case in its tracks"). A stay would further frustrate the district court's interest in managing its caseload and expeditiously resolving the underlying suit given its complexity and the fact that it had already been pending for over a year and a half when the Aspen defendants brought their motion.

## Interests of nonparties to the civil proceeding

The parties do not address the interests of nonparties in much detail, but some courts give "real weight" to this factor. *Golden Quality Ice Cream Co. v. Deerfield Specialty*, 87 F.R.D. 53, 58 (E.D. Pa. 1980). For example, where "key managerial officials" of a corporate defendant risk self-incrimination if they provide answers for the corporation in its defense of the civil suit, a court may be more inclined to grant a stay. *Id.*

---

[5]We note that courts occasionally find a stay will in fact promote judicial efficiency "because after the criminal matter is resolved and the Fifth Amendment issue gone, civil discovery will proceed more smoothly and efficiently." *King*, 16 P.3d at 59. Under the particular circumstances of this case, however, the district court could reasonably conclude otherwise.

Here, the corporate Aspen defendants suggest that they can only refute the Gragson plaintiffs' allegations through their employees and officers. The corporate Aspen defendants therefore assert that they will be left defenseless because these individuals will likely assert their Fifth Amendment privilege against self-incrimination. But as the Supreme Court has explained, a corporate defendant in such a circumstance has an obligation to " 'appoint an agent who could, without fear of self-incrimination, furnish such requested information as was available to the corporation.' " *United States v. Kordel*, 397 U.S. 1, 8 (1970) (quoting *United States v. 3963 Bottles, More or Less, etc.*, 265 F.2d 332, 336 (7th Cir. 1959)). Thus, there are less drastic measures, short of a stay, "by which a trial court may compel discovery disclosures by a corporate defendant while at the same time protecting the Fifth Amendment rights of its employees." *Avant! Corp. v. Superior Court*, 94 Cal. Rptr. 2d 505, 512 (Ct. App. 2000). In any event, the employees and officers of the corporate Aspen defendants of course remain free to raise their Fifth Amendment rights should they be called as witnesses. *See id.* at 512-13. We therefore do not believe that the interests of nonparties are directly implicated.

### *Interest of the public in the civil and criminal matters*

The final relevant factor—the effect of a stay on the public—"is perhaps the most important factor in the equation, albeit the one hardest to define." Milton Pollack, Sr. J., U.S. Dist. Ct., S.D.N.Y., Parallel Civil and Criminal Proceedings, 129 F.R.D. 201, 205 (Oct. 17-19, 1989). There is a "presumption that the public has an interest in prompt resolution of civil cases." *Microfinancial*, 385 F.3d at 79 n.4 (citing FRCP 1, the federal counterpart to NRCP 1). In addition, the public at large has a strong interest in the swift resolution of claims brought to remedy the "[d]issemination of false or misleading information by companies to members of the investing public." *Securities & Exchange Com'n v. Dresser Indus.*, 628 F.2d 1368, 1377 (D.C. Cir. 1980).

The Gragson plaintiffs have alleged that the Aspen defendants defrauded investors by operating a large-scale real estate scam that caused millions of dollars in damages. The public undoubtedly has a strong interest in rooting out such activity as quickly as possible. As noted above, the relief sought by the Aspen defendants would halt the civil proceeding indefinitely, without any way to forecast when it could return to the district court's active docket. The delay flowing from a stay would shake the public's confidence in the administration of justice. *See Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995) (holding that the public's interest in speedily resolving a federally insured savings and loan case outweighed the defendant's interest in a stay because, among other things, a delay "would have been detrimental to pub-

lic confidence in the enforcement scheme for thrift institutions''); *see also Avant! Corp.*, 94 Cal. Rptr. 2d at 513 (''Clearly, the public has a significant interest in a system that encourages individuals to come to court for the settlement of their disputes.''). Thus, as with most of the other applicable factors, the public's interest in the prompt resolution of the civil proceeding weighs against a stay.

## CONCLUSION

For the foregoing reasons, we conclude that the district court did not abuse its discretion in determining that, on balance, the interests of the Aspen defendants in a stay do not outweigh the countervailing interests involved.[6] Consequently, because the Aspen defendants are not entitled to the extraordinary relief requested, we deny this petition for extraordinary writ relief.[7]

CHERRY, C.J., and DOUGLAS, GIBBONS, PICKERING, HARDESTY, and PARRAGUIRRE, JJ., concur.

---

[6]We have considered the Aspen defendants' remaining arguments and conclude that they are without merit.

[7]In light of this opinion, we vacate the stay ordered by this court on July 20, 2011.