**130 Nev., Advance Opinion 61**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| LAS VEGAS SANDS CORP., A NEVADA CORPORATION; AND SANDS CHINA LTD., A CAYMAN ISLANDS CORPORATION, Petitioners, vs. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE ELIZABETH GOFF GONZALEZ, DISTRICT JUDGE, Respondents, and STEVEN C. JACOBS, Real Party in Interest. | No. 62944 <br><br> **FILED** <br><br> AUG 0 7 2014 <br><br> TRACIE K. LINDEMAN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Original petition for a writ of prohibition or mandamus challenging a district court order finding that petitioners violated a discovery order and scheduling an evidentiary hearing to determine appropriate sanctions.

*Petition denied.*

Morris Law Group and Steve L. Morris and Rosa Solis-Rainey, Las Vegas; Kemp, Jones & Coulthard, LLP, and J. Randall Jones and Mark M. Jones, Las Vegas; Holland & Hart LLP and J. Stephen Peek and Robert J. Cassity, Las Vegas,
for Petitioners.

Pisanelli Bice PLLC and Todd L. Bice, James J. Pisanelli, and Debra L. Spinelli, Las Vegas,
for Real Party in Interest.

12/17/14: Corrected per letter to publishers. CJ

14-2080.00

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, GIBBONS, C.J.:

In this opinion, we consider whether a Nevada district court may properly issue a discovery order that compels a litigant to violate a foreign international privacy statute. We conclude that the mere existence of an applicable foreign international privacy statute does not itself preclude Nevada district courts from ordering foreign parties to comply with Nevada discovery rules. Thus, civil litigants may not utilize foreign international privacy statutes as a shield to excuse their compliance with discovery obligations in Nevada courts. Rather, the existence of an international privacy statute is relevant to a district court's sanctions analysis if the court's discovery order is disobeyed. Here, the district court properly employed this framework when it found that the existence of a foreign international privacy statute did not excuse petitioners from complying with the district court's discovery order. And because the district court has not yet held the hearing to determine if, and the extent to which, sanctions may be warranted, our intervention at this juncture would be inappropriate. We therefore deny this writ petition.

---

[1]The Honorable Kristina Pickering and the Honorable Ron Parraguirre, Justices, voluntarily recused themselves from participation in the decision of this matter.

## FACTS AND PROCEDURAL HISTORY

This matter arises out of real party in interest Steven C. Jacobs's termination as president and chief executive officer of petitioner Sands China. After his termination, Jacobs filed a complaint against petitioners Las Vegas Sands Corp. (LVSC) and Sands China Ltd., as well as nonparty to this writ petition, Sheldon Adelson, the chief executive officer of LVSC (collectively, Sands). Jacobs alleged that Sands breached his employment contract by refusing to award him promised stock options, among other things.

Almost three years ago, this court granted a petition for a writ of mandamus filed by Sands China and directed the district court to hold an evidentiary hearing and issue findings as to whether Sands China is subject to personal jurisdiction in Nevada. *See Sands China Ltd. v. Eighth Judicial Dist. Court*, Docket No. 58294 (Order Granting Petition for Writ of Mandamus, August 26, 2011). Due to a string of jurisdictional discovery disputes that have arisen since that order was issued, the district court has yet to hold the hearing.

Throughout jurisdictional discovery, Sands China has maintained that it cannot disclose any documents containing personal information that are located in Macau due to restrictions within the Macau Personal Data Protection Act (MPDPA). Approximately 11 months into jurisdictional discovery, however, Sands disclosed for the first time that, notwithstanding the MPDPA's prohibitions, a large number of documents contained on hard drives used by Jacobs and copies of Jacobs's emails had been transported from Sands China in Macau to LVSC in the

United States.[2]  In response to Sands's revelation, the district court sua sponte ordered a sanctions hearing.  Based on testimony at that hearing, the district court determined that the transferred documents were knowingly transferred to LVSC's in-house counsel in Las Vegas and that the data was then placed on a server at LVSC's Las Vegas property.  The district court also found that both in-house and outside counsel were aware of the existence of the transferred documents but had been concealing the transfer from the district court.

Based on these findings, the district court found that Sands's failure to disclose the transferred documents was "repetitive and abusive," deliberate, done in order to stall jurisdictional discovery, and led to unnecessary motion practice and a multitude of needless hearings.  The district court issued an order in September 2012 that, among other things, precluded Sands from raising the MPDPA "as an objection or as a defense to admission, disclosure or production of any documents."  Sands did not challenge this sanctions order in this court.

Subsequently, Sands filed a report detailing its Macau-related document production.  Sands's report indicated that, with respect to all of the documents that it had produced from Macau, it had redacted personal data contained in the documents based on MPDPA restrictions prior to providing the documents to Jacobs.  In response to Sands's redactions

---

[2]Sands stated that the presence of the documents in the United States was not disclosed at an earlier time because the documents were brought to the United States mistakenly, and Sands had been seeking guidance from the Macau authorities on whether they could be disclosed under the MPDPA.

based on the MPDPA, Jacobs moved for NRCP 37 sanctions, arguing that Sands had violated the district court's September 2012 order.

The district court held a hearing on Jacobs's motion for sanctions, at which the court stated that the redactions appeared to violate the September 2012 order. In its defense, Sands argued that the September 2012 order had prohibited it from raising the MPDPA as an objection or defense to "admission, disclosure or production" of documents, but not as a basis for *redacting* documents. The district court disagreed with Sands's interpretation of the sanctions order, noting:

> I certainly understand [the Macau government has] raised issues with you. But as a sanction for the inappropriate conduct that's happened in this case, in this case you've lost the ability to use that as a defense. I know that there may be some balancing that I do when I'm looking at appropriate sanctions under the Rule 37 standard as to why your client may have chosen to use that method to violate my order. And I'll balance that and I'll look at it and I'll consider those issues.

Based on the above findings, the district court entered an order concluding that Jacobs had "made a prima facie showing as to a violation of [the district] [c]ourt's orders which warrants an evidentiary hearing" regarding whether and the extent to which NRCP 37 sanctions were warranted. The district court set an evidentiary hearing, but before this hearing was held, Sands filed this writ petition, asking that this court direct the district court to vacate its order setting the evidentiary hearing.

## DISCUSSION

A writ of mandamus is available to compel the performance of an act that the law requires or to control an arbitrary or capricious exercise of discretion. *Aspen Fin. Servs., Inc. v. Eighth Judicial Dist.*

*Court*, 128 Nev. ___, ___, 289 P.3d 201, 204 (2012). A writ of prohibition may be warranted when the district court exceeds its jurisdiction. *Id.* Although a writ of prohibition is a more appropriate remedy for the prevention of improper discovery, writ relief is generally unavailable to review discovery orders. *Id.*; *see also Valley Health Sys., L.L.C. v. Eighth Judicial Dist. Court*, 127 Nev. ___, ___, 252 P.3d 676, 679 (2011) (providing that exceptions to this general rule exist when (1) the trial court issues a blanket discovery order without regard to relevance, or (2) a discovery order requires disclosure of privileged information). Nevertheless, "in certain cases, consideration of a writ petition raising a discovery issue may be appropriate if an important issue of law needs clarification and public policy is served by this court's invocation of its original jurisdiction . . . ." *Aspen Fin. Servs., Inc. v. Eighth Judicial Dist. Court*, 129 Nev. ___, ___, 313 P.3d 875, 878 (2013) (internal quotation marks omitted). "The burden is on the petitioner to demonstrate that extraordinary relief is warranted." *Valley Health*, 127 Nev. at ___, 252 P.3d at 678.

In its writ petition, Sands argues generally that this court's intervention is warranted because the district court has improperly subjected Sands to discovery sanctions based solely on Sands's attempts to comply with the MPDPA. Sands has not persuasively argued that either of this court's two generally recognized exceptions for entertaining a writ petition challenging a discovery order apply. *See Valley Health*, 127 Nev. at ___, 252 P.3d at 679. Nevertheless, the question of whether a Nevada district court may effectively force a litigant to choose between violating a discovery order or a foreign privacy statute raises public policy concerns and presents an important issue of law that has relevance beyond the

SUPREME COURT
OF
NEVADA

(O) 1947A

6

parties to the underlying litigation and cannot be adequately addressed on appeal. Therefore, we elect to entertain the petition. *See Aspen Fin. Servs.*, 129 Nev. at ___, 313 P.3d at 878.

*Foreign international privacy statutes cannot be used by litigants to circumvent Nevada discovery rules, but should be considered in a district court's sanctions analysis*

The intersection between Nevada discovery rules and international privacy laws is an issue of first impression in Nevada. The Nevada Rules of Civil Procedure authorize parties to discover any nonprivileged evidence that is relevant to any claims or defenses at issue in a given action. NRCP 26(b)(1). On the other hand, many foreign nations have created nondisclosure laws that prohibit international entities from producing various types of documents in litigation. *See generally* Note, *Foreign Nondisclosure Laws and Domestic Discovery Orders in Antitrust Litigation*, 88 Yale L.J. 612 (1979).

The United States Supreme Court has evaluated the intersection between these two competing interests and determined that such a privacy statute does not, by itself, excuse a party from complying with a discovery order. *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court*, 482 U.S. 522, 544 n.29 (1987) ("It is well settled that such statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." (citing *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 204-06 (1958))). Generally, courts in similar situations have considered a variety of factors, including (1) "the importance to the investigation or litigation of the documents or other information requested"; (2) "the degree of specificity of the request"; (3) "whether the information originated in the

United States"; (4) "the availability of alternative means of securing the information"; and (5) "the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." Restatement (Third) of Foreign Relations Law § 442(1)(c) (1987); *see also Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 193 (E.D.N.Y. 2010). But there is some disagreement as to when courts should evaluate such factors.

Some jurisdictions, including the United States Court of Appeals for the Second Circuit, generally evaluate these factors both when deciding whether to issue an order compelling production of documents located in a foreign nation and when issuing sanctions for noncompliance of that order. *Linde,* 269 F.R.D. at 196.[3]

The United States Court of Appeals for the Tenth Circuit has espoused an approach in which a court's analysis of the foreign law issue is only relevant to the imposition of sanctions for a party's disobedience, and not in evaluating whether to issue the discovery order. *Arthur Andersen & Co. v. Finesilver*, 546 F.2d 338, 341-42 (10th Cir. 1976). The Tenth Circuit noted that in *Societe Internationale*, the Supreme Court

---

[3]Even within the Second Circuit, there is some uncertainty as to when a court should apply these factors. *See In re Parmalat Sec. Litig.*, 239 F.R.D. 361, 362 (S.D.N.Y. 2006) ("'[T]he modern trend holds that the mere existence of foreign blocking statutes does not prevent a U.S. court from ordering discovery although it may be more important to the question of sanctions in the event that a discovery order is disobeyed by reason of a blocking statute.'" (quoting *In re Auction Houses Antitrust Litig.*, 196 F.R.D. 444, 446 (S.D.N.Y. 2000))).

SUPREME COURT
OF
NEVADA

(O) 1947A

stated that a party's reasons for failing to comply with a production order "'can hardly affect the fact of noncompliance and are relevant only to the path which the [d]istrict [c]ourt might follow in dealing with [the party's] failure to comply.'" *Id.* at 341 (quoting *Societe Internationale*, 357 U.S. at 208). Based on this language, the Tenth Circuit determined that a court should only consider the foreign privacy law when determining if sanctions are appropriate. *Id.*; *see also* Wright, *Discovery*, 35 F.R.D. 39, 81 (1964) ("The effect of those laws is considered in determining what sanction to impose for noncompliance with the order, rather than regarded as a reason for refusing to order production").

In our view, the Tenth Circuit's approach is more in line with Supreme Court precedent.[4] *See, e.g., Arthur Andersen*, 546 F.2d at 341-42; *In re Westinghouse Elec. Corp. Uranium Contracts Litig.*, 563 F.2d 992, 997 (10th Cir. 1977); Timothy G. Smith, Note, *Discovery of Documents Located Abroad in U.S. Antitrust Litigation: Recent Developments in the Law Concerning the Foreign Illegality Excuse for Non-Production*, 14 Va. J. Int'l L., 747, 753 (1974) (noting that Second Circuit cases failed to observe the Supreme Court's distinction between a court's power to compel discovery and the appropriate sanctions if a party failed to comply). We

---

[4]That is not to say that Nevada courts should never consider a foreign privacy statute in issuing a discovery order. Certainly, a district court has wide discretion to consider a number of factors in deciding whether to limit discovery that is either unduly burdensome or obtainable from some other sources. NRCP 26(b)(2). Thus, it would be well within the district court's discretion to account for such a foreign law in its analysis, but we decline to adopt the Second Circuit's requirement of a full multifactor analysis in ordering the production of such documents.

are persuaded by the Tenth Circuit's approach, and conclude that the mere presence of a foreign international privacy statute itself does not preclude Nevada courts from ordering foreign parties to comply with Nevada discovery rules. Rather, the existence of an international privacy statute is relevant to the district court's sanctions analysis in the event that its order is disobeyed. *Arthur Andersen*, 546 F.2d at 341-42.

Here, Sands argues that the district court never purported to balance any of the relevant factors before concluding that its MPDPA redactions were sanctionable. But in our view, the district court has yet to have that opportunity. The district court has properly indicated that it would "balance" Sands's desire to comply with the MPDPA with other factors at the yet-to-be-held sanctions hearing. Thus, Sands has not satisfied its burden of demonstrating that the district court exceeded its jurisdiction or arbitrarily or capriciously exercised its discretion. *Aspen Fin. Servs.*, 128 Nev. at ___, 289 P.3d at 204; *Valley Health*, 127 Nev. at ___, 252 P.3d at 678. Because we are confident that the district court will evaluate the relevant factors noted above in determining what sanctions, if any, are appropriate when it eventually holds the evidentiary hearing, we decline to preempt the district court's consideration of these issues by entertaining the additional arguments raised in Sands's writ petition.[5]

---

[5]The majority of Sands's briefing argues that the district court improperly (1) ordered discovery of documents that had no relevance to the issue of personal jurisdiction, and (2) concluded that Sands violated the technical wording of the September 2012 sanctions order. Although this first contention arguably falls within *Valley Health*'s first exception, *see* 127 Nev. at ___, 252 P.3d at 679, the documentation accompanying Sands's writ petition does not clearly support the contention. *Id.* at ___,

*continued on next page . . .*

## CONCLUSION

Having considered the parties' filings and the attached documents, we conclude that our intervention by extraordinary relief is not warranted. Specifically, we conclude that the mere presence of a foreign international privacy statute does not itself preclude Nevada district courts from ordering litigants to comply with Nevada discovery rules. Rather, the existence of such a statute becomes relevant to the district court's sanctions analysis in the event that its discovery order is disobeyed. Here, to the extent that the challenged order declined to excuse petitioners for their noncompliance with the district court's previous order, the district court did not act in excess of its jurisdiction or arbitrarily or capriciously. And because the district court properly indicated that it intended to "balance" Sands's desire to comply with the foreign privacy law in determining whether discovery sanctions are warranted, our intervention at this time would inappropriately preempt

---

*. . . continued*

252 P.3d at 678 ("The burden is on the petitioner to demonstrate that extraordinary relief is warranted."). In fact, the district court specifically noted that Sands may withhold all documents that were only relevant to merits discovery and thus irrelevant to the district court's jurisdiction over Sands China. Sands's second contention does not fall within either of *Valley Health*'s two exceptions, and Sands does not argue otherwise. *Id.* at ___, 252 P.3d at 679. Further, neither issue raises public policy concerns or presents an important issue of law that has relevance beyond the parties to the underlying litigation. *Aspen Fin. Servs.*, 129 Nev. at ___, 313 P.3d at 878. As a result, we decline to entertain Sands's remaining arguments.

the district court's planned hearing. As a result, we deny Sands's petition for a writ of prohibition or mandamus.

_____, C.J.
Gibbons

We concur:

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Saitta

CHERRY, J., concurring in the result:

I agree with the majority that our intervention by extraordinary relief is not warranted at this time. However, I do not believe that a lengthy opinion by four members of this court on the conduct leading up to the sanctions hearing, or on the factors that the district court should consider when exercising its discretion in imposing future sanctions, is necessary or appropriate at this juncture of this case, when a thorough and fact-finding evidentiary hearing has not yet been conducted by the district court.

It is premature for this court to anticipate, project, or predict the totality of findings that the district court may make after the conclusion of any evidentiary hearing. At such time as findings of fact and conclusions of law are finalized by the district court, then—and only then—should an appropriate disposition be rendered in the form of a published opinion and made public.

_____, J.
Cherry