**131 Nev., Advance Opinion 18**

## IN THE SUPREME COURT OF THE STATE OF NEVADA

COYOTE SPRINGS INVESTMENT,
LLC,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
ELIZABETH GOFF GONZALEZ,
DISTRICT JUDGE,
Respondents,
and
BRIGHTSOURCE ENERGY, INC.,
Real Party in Interest.

No. 64623

FILED

APR 0 2 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of prohibition or mandamus challenging a district court order that required the disclosure of a private communication between a witness and plaintiff's counsel during a deposition.

*Petition denied.*

Pisanelli Bice, PLLC, and Todd L. Bice, James J. Pisanelli, Debra L. Spinelli, Maria Magali Calderon, and Jordan T. Smith, Las Vegas, for Petitioner.

Kaempfer Crowell and Peter C. Bernhard and Lisa J. Zastrow, Las Vegas, for Real Party in Interest.

BEFORE HARDESTY, C.J., DOUGLAS and CHERRY, JJ.

SUPREME COURT
OF
NEVADA

(O) 1947A

7/21/15: Corrected per letter to publishers CJ

15-09917

*OPINION*

By the Court, CHERRY, J.:

This petition for extraordinary writ relief challenges a district court order requiring a witness for the plaintiff to disclose the substance of communications that took place between the witness and plaintiff's counsel during a break in the witness's deposition. To resolve it, we must decide whether a private communication between a witness and an attorney during a requested break in the witness's deposition is entitled to protection from discovery under the attorney-client privilege.

We hold that attorneys may confer with witnesses during requested recesses in depositions only to determine whether to assert a privilege. For the attorney-client privilege to apply to these conferences, however, counsel must state on the deposition record (1) the fact that a conference took place, (2) the subject of the conference, and (3) the result of the conference. In the instant case, we conclude that the communications between the witness and plaintiff's counsel during the break in the witness's deposition are discoverable because plaintiff's counsel requested the recess in the deposition and failed to make a sufficient, contemporaneous record of the privileged communications.

*FACTS AND PROCEDURAL HISTORY*

Petitioner Coyote Springs Investment, LLC, and real party in interest BrightSource Energy, Inc., entered into a lease for BrightSource to develop a solar energy generating facility on Coyote Springs' property. The parties negotiated the terms of the lease through several term sheets exchanged via email. The parties then finalized and executed the lease, and Coyote Springs created a lease summary for its bankers and appraisers. Roughly one year later, BrightSource sought to terminate the

lease. In response, Coyote Springs informed BrightSource that the termination was ineffective in the absence of a lease termination fee. A dispute arose regarding the termination terms and whether just one or both of two conditions (the so-called tower height approval and transmission solution achievement conditions) had to be met before a termination fee could be imposed because the term sheets and the lease summary apparently contained language different from the actual lease as to those conditions. Subsequently, Coyote Springs sued BrightSource, arguing that the lease's termination was ineffective without payment of the termination fee.

*The deposition discussions at issue*

In preparation for trial, the parties deposed Harvey Whittemore, the former co-owner and manager of Coyote Springs. Whittemore testified that he and Coyote Springs' general counsel, Emilia Cargill, negotiated the lease for Coyote Springs. Whittemore was questioned regarding the lease's termination provisions. Specifically, BrightSource's counsel asked Whittemore whether he had agreed to the termination provisions in the lease. Whittemore answered, "I believe that [the provision] appropriately reflects the definitions" of the lease to which the parties agreed. When asked again about the lease's termination conditions, Whittemore stated that they were the business terms agreed upon by both parties.

Whittemore's deposition was continued and resumed nearly six months later, and BrightSource's counsel further questioned Whittemore about his approval of the term sheets and the lease summary. Whittemore testified that he believed that the term sheets were an accurate statement of terms agreed upon before the lease agreement was finalized. And when BrightSource's counsel questioned Whittemore about

the lease summary distributed to Coyote Springs' bankers and appraisers, Whittemore testified that he believed he had reviewed earlier versions of the summary for accuracy and approved sending the final draft of the summary.

After BrightSource's counsel completed this round of questioning, Coyote Springs' litigation counsel suggested taking a break and requested a conference room for him, Whittemore, and Cargill. BrightSource's counsel objected to any discussion during the break regarding questions that Whittemore had been asked. Coyote Springs' litigation counsel and Cargill then met with Whittemore in a conference room. After returning from the conference, Coyote Springs' counsel resumed questioning Whittemore. During that questioning, Whittemore clarified that he believed the term sheets were not controlling. Upon further questioning, Whittemore explained his understanding of the lease was that once one of the conditions—tower height approval—was met, the company had earned the termination fee. When Coyote Springs' counsel asked whether he had previously noticed that the lease summary was inaccurate, Whittemore agreed that the lease summary was inaccurate but did not recall whether he had noticed it before.

After Coyote Springs' counsel completed his examination of Whittemore, BrightSource's counsel posed several follow-up questions. Although Whittemore could not indicate specific details or cite to any evidence in support of his statement, he emphasized that, prior to the lease's finalization, the parties agreed that the termination fee would be owed solely upon tower height approval and that a transmission solution would not be required for the termination fee to be due.

*BrightSource moves to exclude Whittemore's testimony*

Following Whittemore's depositions, BrightSource filed a motion in limine to exclude Whittemore's post-conference testimony and to "elicit at trial the substance of what was said during the private conference." At a hearing on the motion, the district court concluded that "in general . . . you can't do your witness prep during breaks" and explained that "if [Whittemore] talk[ed] about it at a deposition break and it wasn't part of his preparation that was done ahead of time, it may be fair game" for inquiry. After Coyote Springs' counsel questioned whether this would apply to privileged discussion that occurred during the deposition break, the district court exclaimed, "Why on earth would you do that?" The court explained to counsel that "[y]ou are entitled to go inside that privilege[,] [b]ut you're not entitled to do prep as part of a break in a deposition." Nevertheless, the court then indicated that it was "not sure that that particular instance is one where I wouldn't then give you some leeway and give you some protection."

The trial commenced, and during cross-examination of Whittemore, BrightSource's counsel inquired as to what was discussed at the deposition conference. Coyote Springs' counsel objected based on attorney-client privilege. Although noting that the conference may have addressed privileged information, the court overruled the objection, "given the timing of the communication between counsel and the witness," and allowed the questioning to continue. Coyote Springs' counsel asked to voir dire Whittemore to establish compliance with *In re Stratosphere Corp. Securities Litigation*, 182 F.R.D. 614 (D. Nev. 1998), a case in which a federal district court addressed the propriety of an in-deposition conference, which the court permitted. Whittemore first confirmed that

there was no question pending when he had the private conference during his deposition. Coyote Springs' counsel then asked Whittemore about the substance of the conference, and Whittemore testified that communications he had with Cargill while he was in a leadership role at Coyote Springs were "part of [the] discussion," that whether he misunderstood or misinterpreted either questions or documents presented to him during his examination was "also part of [the] conversation," and that he "[did not] think [they] talked about manners or methods of refreshing [his] recollection at all."

At the close of BrightSource's case, Coyote Springs made an oral motion for reconsideration of the Whittemore deposition issue. The district court denied the oral motion at the time, but the judge stated that she would reconsider after hearing closing arguments. After Coyote Springs' oral motion to reconsider, the district court entered an interim order concerning whether Coyote Springs' contract claims were barred by the doctrine of unilateral or mutual mistake. The court, however, also determined that Whittemore's anticipated testimony about the conference discussion was material to the issue of mistake, and thus stayed the entry of its findings of fact and conclusions of law pending resolution of the instant petition.

## DISCUSSION

"[P]rohibition is a more appropriate remedy for the prevention of improper discovery than mandamus." *Wardleigh v. Second Judicial Dist. Court*, 111 Nev. 345, 350, 891 P.2d 1180, 1183 (1995). Consequently, we consider this petition under the prohibition standard and deny Coyote Springs' alternative request for a writ of mandamus. Although "writs are generally not available to review discovery orders," this court has issued writs to prevent improper discovery orders compelling disclosure of

SUPREME COURT
OF
NEVADA

(O) 1947A

privileged information. *Valley Health Sys., LLC v. Eighth Judicial Dist. Court*, 127 Nev. Adv. Op. No. 15, 252 P.3d 676, 678-79 (2011). The reasoning behind the privilege exception is that "if the discovery order requires the disclosure of privileged material, there would be no adequate remedy at law that could restore the privileged nature of the information, because once such information is disclosed, it is irretrievable." *Id.* at 679; *see also Aspen Fin. Servs., Inc. v. Eighth Judicial Dist. Court*, 128 Nev. Adv. Op. No. 57, 289 P.3d 201, 204 (2012) (explaining that writ relief may be available when "it is necessary to prevent discovery that would cause privileged information to irretrievably lose its confidential nature and thereby render a later appeal ineffective"). Here, because Coyote Springs seeks to prevent privileged information from being disclosed to BrightSource, we consider this petition and examine whether the conference between Whittemore and Coyote Spring's counsel was privileged.

*Protection of private communications during deposition breaks*

The parties dispute whether the conversation between Whittemore and Coyote Springs' counsel during Whittemore's deposition is entitled to protection based upon the attorney-client privilege. Coyote Springs argues that writ relief is warranted because its attorney-client privilege is not waived when its witness and its counsel have privileged communications during a deposition break. BrightSource asserts that the private conference with Whittemore is not privileged because there was discussion about Whittemore's substantive testimony in order to prepare him for examination or to refresh his recollection. It points out that after the private conference occurred, Whittemore repudiated his previous testimony on a material, contested issue of fact.

The attorney-client privilege, codified in NRS 49.095, protects communications between clients or client representatives and lawyers when made in furtherance of legal services and "appl[ies] at all stages of all proceedings." NRS 47.020(2). Clients and attorneys are generally not permitted to confer in the midst of giving testimony, however, and some jurisdictions have concluded that such conferences may lead to a waiver of the attorney-client privilege. *See Aiello v. City of Wilmington*, 623 F.2d 845, 858-59 (3d Cir. 1980) (holding that plaintiff and counsel could not communicate during breaks in cross-examination during trial); *see also* NRCP 30(c) (requiring that witness examination and cross-examination during a deposition proceed as permitted at trial). Two seminal cases directly address the propriety of conferences between attorneys and witnesses during deposition breaks: *Hall v. Clifton Precision*, 150 F.R.D. 525 (E.D. Pa. 1993), and *In re Stratosphere Corp. Securities Litigation*, 182 F.R.D. 614 (D. Nev. 1998).

In *Hall*, the United States District Court for the Eastern District of Pennsylvania held that "conferences between witness and lawyer are prohibited both during the deposition and during recesses," unless the conference concerns the assertion of a privilege. 150 F.R.D. at 529. If a conference is called during a deposition to determine whether to assert a privilege, the *Hall* court further held that "the conferring attorney should place on the record the fact that the conference occurred, the subject of the conference, and the decision reached as to whether to assert a privilege." *Id.* at 530. In *Hall*, plaintiff's counsel informed his client-witness that he could request a private conference at any time during his deposition. *Id.* at 526. The deposition was twice interrupted: first, when the plaintiff requested a private conference about the meaning of the word

SUPREME COURT
OF
NEVADA

(O) 1947A

8

"document," and again when the plaintiff's counsel wished to review a document before his client answered questions pertaining to it. *Id.*

In its ruling, the court referred to Federal Rule of Civil Procedure 30(c), which then stated that "'examination and cross-examination of witnesses [during deposition] may proceed *as permitted at the trial.*'"[1] *Id.* at 527 (emphasis added) (quoting Fed. R. Civ. P. 30(c) (1987)).[2] The court explained that during a civil trial examination, "a witness and his or her lawyer are not permitted to confer at their pleasure during the witness's testimony. Once a witness has been prepared and has taken the stand, that witness is on his or her own." *Id.* at 528 (citing *Aiello*, 623 F.2d at 858-59). The *Hall* court emphasized the need to protect the underlying purposes of deposition rules, which include eliciting the facts of a case before trial, evening the playing field, and obtaining testimony before the witness's recollection "has been altered by . . . the helpful suggestions of lawyers." *Id.* The court reasoned that depositions serve to find out what a witness saw, heard, did, or thinks, and that lawyers "[are] not entitled to be creative with the facts" but instead "must accept the facts as they develop." *Id.*

The court acknowledged that prohibiting private conferences during depositions may create concerns for a witness's right to an attorney

---

[1]Similarly, the Nevada Rules of Civil Procedure do not contain a rule specifically outlining deposition conference procedure. Rather, deposition conferences are governed by NRCP 30(c), which reads similarly to Fed. R. Civ. P. 30(c): "Examination and cross-examination of witnesses may proceed as permitted at the trial."

[2]The current federal rules states that "[t]he examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence."

and due process. *Id.* The court stated, however, that it is a lawyer's "right, if not [his or her] duty"[3] to adequately prepare the witness before a deposition, and any concern after the deposition begins "is somewhat tempered by the underlying goal of our discovery rules: getting to the truth." *Id.* The court therefore determined that the deposing attorney may inquire about any private conferences during depositions in order to ascertain whether there had been any witness coaching and, if so, what that coaching entailed. *Id.* at 529 n.7.

After the *Hall* decision was published, the United States District Court for the District of Nevada concluded that the *Hall* court may have gone too far in its restriction of private conferences during depositions. *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 621 (D. Nev. 1998). The *In re Stratosphere* court held that attorneys may conduct private meetings during unrequested recesses in depositions in order to ensure that the "client did not misunderstand or misinterpret questions or documents," to fulfill their "ethical duty to prepare a witness," *see supra*

---

[3]In support of the view that a lawyer has a duty to adequately prepare a witness before deposition, the court pointed to Pennsylvania Rule of Professional Conduct (PRPC) 1.1, which reads identically to Nevada Rule of Professional Conduct (RPC) 1.1: "Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." *Hall*, 150 F.R.D. at 528 n.4 (citing PRPC 1.1); RPC 1.1. In *In re Stratosphere*, the court commented on the responsibility of an attorney to prepare a client: "The right to prepare a witness is not different before the questions begin than it is during (or after, since a witness may be recalled for rebuttal, etc., during trial)." 182 F.R.D. at 621. Although neither the caselaw nor the rules further explain an attorney's responsibility to prepare a witness to testify, we believe that the responsibility to prepare the witness clearly exists.

*Pa. Rules of Prof'l Conduct R.*

note 2, or to determine whether to assert a privilege. *Id.* at 621. The *In re Stratosphere* court agreed with *Hall* that if an attorney holds a private conference to determine whether to assert a privilege, it "should [be] place[d] on the record the fact that a conference is held . . . , the subject of the conference . . . , and the decision reached as to whether to assert a privilege." *Id.* at 621-22. In *In re Stratosphere*, the plaintiffs, basing their arguments on *Hall*, filed a motion to establish deposition procedures that prohibited all conferences during the deposition—including conferences during breaks and lunches—and plaintiffs sought to establish that opposing counsel may "inquire into whether they have spoken [during deposition breaks] and, if so, what was discussed." *Id.* at 619.

In resolving the motion, the *In re Stratosphere* court agreed with *Hall* that a "questioning attorney is entitled to have the witness, and the witness alone, answer questions," and the witness should not "seek understanding or direction about how to answer the question from his or her attorney." *Id.* at 621. But the court did not adopt *Hall*'s "strict requirements[,]" which, the court opined, do not differentiate between "preclud[ing] attorney-coaching of witnesses" and "deny[ing] someone the right to counsel." *Id.* The court held that absent a showing of abuse of the deposition process, precluding counsel and witness from communicating once a deposition commences unnecessarily infringes upon the right to an attorney. *Id.* at 620-21.

In refusing to adopt *Hall*'s strict guidelines, the court noted that unlike *Hall*'s description of a witness being "on his or her own" during trial, attorneys and clients confer regularly during trial and even when the court calls a recess during the client's testimony. *In re Stratosphere*, 182 F.R.D. at 621; *Hall*, 150 F.R.D. at 528. The court clarified, however, that

SUPREME COURT
OF
NEVADA

(O) 1947A

11

"[s]uch breaks in the action are usually not taken when a question is pending and are usually not at the instigation of the deponent or counsel." *In re Stratosphere*, 182 F.R.D. at 621. Further, the court emphasized that "consultation between lawyers and clients cannot be neatly divided into discussions about testimony and those about other matters," and adopting strict guidelines would allow for "unfettered inquiry into anything which may have been discussed." *Id.* (internal quotations omitted).

Several jurisdictions have followed *In re Stratosphere*'s reasoning and criticized *Hall*'s guidelines as unnecessarily burdensome on the deponent's right to an attorney. *See, e.g.*, *McKinley Infuser, Inc. v. Zdeb*, 200 F.R.D. 648, 650 (D. Colo. 2001) (concluding that *Hall*'s guidelines, taken to the extreme, could effectively bar a deponent from conferring with his or her attorney from the time of deposition through trial because there could be "coaching" that could alter the deponent's trial testimony, which would be an absurd result); *State ex rel. Means v. King*, 520 S.E.2d 875, 882-83 (W. Va. 1999) (explaining that "[a]n attorney should be able to ensure that his or her client did not misunderstand or misinterpret a question or a document" and that "[t]he right to counsel should not be jeopardized absent a showing that the attorney or the deponent is abusing the deposition process"). Accordingly, these jurisdictions have cited *In re Stratosphere*'s guidelines favorably. *See, e.g.*, *McKinley*, 200 F.R.D. at 650 ("I agree with the reasoning of *In re Stratosphere* . . . that the truth finding function is adequately protected if deponents are prohibited from conferring with their counsel while a question is pending."); *King*, 520 S.E.2d at 882 ("With regard to discovery depositions taken in the course of litigation, we believe that the approach taken in *Stratosphere* is the more logical and fair approach.").

We agree with the reasoning in *In re Stratosphere* that *Hall*'s discovery guidelines—which essentially preclude conversations between counsel and witness at any point between the start of depositions until trial when they involve an issue beyond whether to exercise a privilege—are unnecessarily restrictive. Although the holding in *In re Stratosphere* was limited to unrequested recesses, to the extent that the *In re Stratosphere* court appeared to approve of witness-counsel conferences during requested breaks so long as the break did not occur in the middle of questioning, we decline to adopt that reasoning here. *See In re Stratosphere*, 182 F.R.D. at 621. Accordingly, we hold that attorneys may confer with witnesses during an unrequested recess or break in a discovery deposition. *See id.* Furthermore, we hold that attorneys may not request a break to confer with witnesses in a discovery deposition unless the purpose of the break is to determine whether to assert a privilege. *Id.* We additionally hold that once the deposition proceedings resume after a private conference that is requested to determine whether to assert a privilege, the attorney must place the following on the record: (1) the fact that a conference took place; (2) the subject of the conference; and (3) the result of the conference, specifically, the outcome of the decision whether to assert a privilege. *See id.* at 621-22; *see also Hall*, 150 F.R.D. at 530. We stress that counsel must make a record of the confidential communications promptly after the deposition resumes in order to preserve the attorney-client privilege.

*Coyote Springs' assertion of privilege*

At trial, Coyote Springs relied upon *In re Stratosphere* and sought to protect the contents of the private conference through voir dire of Whittemore. Coyote Springs argues that the record reflects that it followed the precise practice approved by *In re Stratosphere* and the

communications should therefore be protected. We disagree, as Coyote Springs' record of the deposition conference was insufficient.

The trial record reflects that counsel and Whittemore "broke and went into a private office." Had this been placed on the deposition record, it would have satisfied the first requirement of record sufficiency, a record that a conference took place. The trial record next reflects that, during the deposition conference, Coyote Springs' counsel asked Whittemore if he "misunderstood or misinterpreted either questions or documents that had been presented . . . earlier in the examination" and that counsel did not "coach" Whittemore's testimony or refresh his recollection. Had this been placed on the deposition record, this also would have satisfied the second requirement for record sufficiency, a record of the subjects discussed between the attorney and the witness. However, Coyote Springs did not make a record of the result of the conference, such as the outcome of a decision whether to assert a privilege. Therefore, even if the two previous representations had been placed on the deposition record, Coyote Springs still would not be able to assert the privilege because it did not satisfy the third requirement.

Accordingly, the communications between Whittemore and Coyote Springs' counsel during the break in Whittemore's deposition are not privileged because Coyote Springs requested a break in the proceedings, failed to make a record of the result reached in the conference, and failed to make a prompt record of the communications.

## CONCLUSION

Coyote Springs requested a recess in order to conduct a private conference with Whittemore. Following the conference, it did not make a prompt, sufficient record of the conference so as to preserve the attorney-client privilege. *Cf. In re Stratosphere*, 182 F.R.D. at 621. Thus,

the district court did not abuse its discretion in determining that the conference was not privileged. *Club Vista Fin. Servs., LLC v. Eighth Judicial Dist. Court*, 128 Nev. Adv. Op. No. 21, 276 P.3d 246, 249 (2012). Writ relief is therefore not warranted, and we deny this petition.

_____, J.
Cherry

We concur:

_____, C.J.
Hardesty

_____, J.
Douglas